**Howard YOUNG et al.**

v.

**Gloria PROCTOR.**

Supreme Judicial Court of Maine.

Argued May 9, 1985.

Decided July 15, 1985.

Ayer & Hodsdon, Stephen Y. Hodsdon (orally), Kennebunk, for plaintiffs.

Jensen Baird, Gardner & Henry John H. Montgomery (orally), Portland, Kurtz & Myers, Theodore H. Kurtz, South Paris, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

ROBERTS, Justice.

Howard and Rachel Young appeal from a judgment entered in the Superior Court, York County, upon a jury finding that Gloria Proctor was not liable for injuries caused to their son, Tony Young, by Proctor's dog, Tyler. The Youngs contend that the trial court erred (1) in instructing the jury that the owner's knowledge of the dog's injurious propensities was a prerequisite to common law strict liability and (2) in refusing to admit evidence of a District Court finding against Proctor under 7 M.R.S.A. § 3605 (1979) (Complaints by Persons Assaulted by Dogs). Because we find no

error in the Superior Court's actions, we affirm the judgment.

On the morning of June 11, 1982, the eight-year-old Tony walked from his parents' property to the adjoining property of Gloria Proctor to meet Proctor's daughter, Helen Staeth, age twelve, to walk to the school bus stop. At this time, Tony, with Helen's permission, patted the dog, Tyler. It appears that Helen then proceeded to the school bus stop while Tony remained behind. Tyler bit Tony on the shoulder, shaking him and running along his runner with Tony in his mouth. Shortly thereafter Rachel Young, hearing the screams of Helen and Tony, ran to Proctor's property and witnessed her son held by the dog. She was able to free Tony by sitting on the dog's back and forcibly opening his jaws. Tony was then taken to Webber Hospital in Biddeford where he was hospitalized. A number of witnesses testified at trial that Tony had repeatedly teased Tyler before the dog bite incident.

On June 14, 1982, a complaint was filed against Gloria Proctor in Biddeford District Court under section 3605 [1] alleging that she was the keeper of a "dangerous and vicious" dog. Although the complaint indicated that she was being charged with a Class E crime, the proceeding is civil in nature. The District Court records are not clear as to whether she pleaded guilty to the charge or *nolo contendere*. She was convicted of the charge and an order was entered requiring the "dog to be restrained inside a five foot wire fence and a one-quarter inch wire cable secured with padlock." The plea was changed by motion on December 20, 1983 to *nolo contendere*.

The complaint in this case was filed on December 29, 1982 in Superior Court by Howard Young, individually and as next friend of Tony Young, and Rachel Young for damages resulting from the dog bite incident. The complaint alleged strict liability under the common law and absolute liability under 7 M.R.S.A. § 3651 (1979) [2] against Proctor. Proctor filed a counterclaim against the Youngs but that claim was voluntarily dismissed.

At trial the court instructed the jury over plaintiffs' objection that in order to be found strictly liable, Proctor must have had knowledge of Tyler's vicious propensities and that notice meant the same as knowledge. A special verdict form setting forth the two causes of action was submitted to the jury. The jury found in favor of Proctor on both causes of action. They also found specially that Proctor did not have notice of Tyler's injurious propensities and that Tony provoked Tyler. The Youngs seasonably appealed.

The Youngs contend that the trial court erred in instructing the jury that under the common law an owner of a dog is strictly liable for injuries caused by the animal only if the owner had knowledge of the animal's injurious propensities. Young argues that the Maine cases which have discussed this issue have said that mere notice of the dog's injurious propensities is sufficient for liability. Although the Youngs now cite

1. 7 M.R.S.A. § 3605 states in pertinent part:
Whoever is assaulted by a dog when peaceably walking or riding or finds a dog strolling outside the premises of its keeper and the said dog is not safety [sic] muzzled, may, within 4 days thereafter, make written complaint before the District Court having jurisdiction, that he really believes and has reason to believe that said dog is dangerous and vicious. Whereupon said court shall order said owner or keeper to appear and answer to said complaint by serving said owner or keeper of said dog with a copy of said complaint and order a reasonable time before the day set for the hearing thereon. If, upon hearing, the court is satisfied that the complaint is true, he shall order the dog to be killed or order said owner or keeper of said dog to muzzle the same, restrain the same, or confine said dog to the premises of said owner or keeper and the owner or keeper shall pay the costs.

2. 7 M.R.S.A. § 3651 (1979) states:
When a dog does damage to a person or his property, his owner or keeper, and the parent, guardian, master or mistress of any minor who owns such dog, forfeits to the person injured the amount of the damage done, provided said damage was not occasioned through the fault of the person injured, to be recovered by civil action.

section 509 of the Restatement (Second) of Torts (1977), the proposed jury instruction they submitted to the presiding justice is not supported by that authority. In the Superior Court they cited two Maine cases neither of which support the proposition that mere notice is sufficient or that strict liability attaches when the owner should have known of the animal's injurious propensity.

 After a careful review of our cases, we conclude that the trial judge correctly refused the Youngs' requested instruction. Moreover, at the conclusion of the charge, plaintiffs' counsel again focussed upon *notice* as opposed to *knowledge*. To clarify any confusion resulting from our use of the terms notice and knowledge interchangeably in our past opinions, we now specifically adopt the Restatement view that

(1) A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to his class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing so.

(2) This liability is limited to harm that results from the abnormally dangerous propensity of which the possessor knows or has reason to know.

Restatement (Second) of Torts § 509 (1977). The Restatement § 12 makes clear the distinction between "reason to know," which implies no duty to know, and "should know." We have never imposed strict liability because the owner should have known of the animal's dangerous propensities; we have always required knowledge. Additionally, in previous cases we have refused to find this requirement too arduous. *See Pettitt v. Lizotte,* 454 A.2d 329, 335 n. 7 (Me.1982); *Teel v. Colson,* 396 A.2d 529, 535 (Me.1979). In this case, the judge correctly instructed the jury that knowledge of the dog's injurious propensities was re-

quired to impose strict liability under the common law.[3]

 Young also argues that the court erred in refusing to admit the District Court's finding against Proctor under section 3605. Because the violation of that section is civil rather than criminal, and the issues in the two proceedings are different, we find no error in the trial court's ruling. *See Pattershall v. Jenness,* 485 A.2d 980 (Me.1984).

The entry is:

Judgment affirmed.

All concurring.

---

**3.** In this case the plaintiff makes no claim based on negligence. *Cf. Henry v. Brown,* 495 A.2d 324 (Me.1985) (ordinary negligence supporting claim).