RONAELE J. SALISBURY *vs.* ROBERT L. FERIOLI & others[1];
ACORN ANIMAL HOSPITAL, P.C., third-party defendant
(and a companion case[2]).

No. 98-P-1794 & 99-P-209.

Norfolk. Suffolk. March 14, 2000. - June 21, 2000.

Present: GREENBERG, KAPLAN, & SMITH, JJ.

*Dog. Proximate Cause. Words,* "Keeper."

Evidence at the trial of a complaint brought under G. L. c. 140, § 155, for
injuries assertedly caused by a dog, did not demonstrate that the plaintiff
was the dog's "keeper" such as would prevent the maintenance of such an
action against the owner of the dog; the judge erred in directing a verdict
for the defendant on that basis. [487-488]

That the owners of a dog surrendered all custody of the animal to a veterinary
clinic rendered a veterinary technician a "keeper" of the dog for purposes
of G. L. c. 140, § 55, and the technician was thereby precluded from
maintaining an action under the statute against the dog's owner for injuries
resulting from a dog bite. [489-491]

CIVIL ACTION commenced in the Superior Court Department on
December 9, 1996.

The case was heard by *Patrick F. Brady*, J., on motions for
summary judgment.

CIVIL ACTION commenced in the Superior Court Department on
March 18, 1998.

The case was tried before *Margaret R. Hinkle*, J.

*Alan Garber* for Ronaele J. Salisbury.

*John R. Bologna* for Robert L. Ferioli & others.

*Dragan M. Cetkovic* for Acorn Animal Hospital, P.C.

*Hans R. Hailey* (*Gene R. Charny* with him) for Laura Perillo.

[1]Barbara J. Ferioli and Amy L. Smyth. The Feriolis are Smyth's parents.

[2]Laura Perillo *vs.* Ella Cameron and Providence Washington Insurance
Company (99-P-209). These cases were not consolidated for appeal, but are
treated together.

*Mark W. Shaughnessy* for Ella Cameron.

*Lawrence F. Boyle & Deborah I. Ecker,* for Providence Washington Insurance Company, submitted a brief.

KAPLAN, J. 1. *The Perillo case.* The plaintiff, Laura Perillo, complained of the defendant, Ella Cameron, dog owner, under the familiar strict-liability dog statute, G. L. c. 140, § 155; she also sought recovery against Cameron's insurer, Providence Washington Insurance Company, under G. L. c. 93A (and c. 176D) for the alleged failure of the company to enter into good faith settlement negotiations about Perillo's claim against the insured.

Perillo's claim against Cameron was tried to a jury in Superior Court. At the close of the plaintiff's case, the judge allowed the defendant's motion for a directed verdict. The plaintiff intended to appeal. If the directed verdict were to be upheld on appeal, then the c. 93A claim presumably must fail, so judgment entered by consent for the insurer, but in a provisional sense, contingent on the result of appeal.[3]

Upon the indicated present appeal, we hold the judge erred in allowing the directed verdict, since there was adequate evidence for a jury determination that Perillo was not a "keeper" of the dog and the dog "did" damage to her in the terms of the statute.[4] As judgment for the defendant Cameron is to be reversed and the case remanded for retrial, the judgment for the insurer will be vacated and the c. 93A claim reinstated.

The plaintiff's case stood as follows. Seventy-three years old at the time, the plaintiff on October 9, 1995, came from her residence in Florida to visit her sister Cameron in Carver. Although she had visited with the sister on other occasions, this was the first time she slept overnight at the sister's place.

---

[3]After verdict had been directed, the plaintiff moved for a separate judgment for the defendant Cameron pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). The judge denied the motion, indicating she preferred that the claim against the insurer not remain dangling in the Superior Court while a separate judgment for Cameron was under appeal. To expedite matters, judgment then entered by consent for the insurer.

[4]General Laws c. 140, § 155, as amended by St. 1968, c. 281, provides in relevant part: "If any dog shall do any damage to either the body or property of any person, the owner or keeper, or if the owner or keeper be a minor, the parent or guardian of such minor, shall be liable for such damage, unless such damage shall have been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog."

The sister Cameron owned a terrier, Joshua, standing about a foot high and weighing about thirty pounds. Cameron and her son Mitchell, who lived with her, took care of the dog from day to day in all the usual ways. The dog was chained when outside the house: the local law called for a leash and if free the dog would run away, as the house was not fenced. When Cameron and Mitchell were absent from the house the dog was kept chained inside.

On the morning of October 10, Cameron and Mitchell left for work. About eight or nine o'clock, the plaintiff arose and took coffee while still in a robe and slippers. She heard the dog whining to be let out and decided to take him outdoors to the porch to be chained there. She opened the back door. Then, facing the front of the house, with the dog facing in the opposite direction toward the open back door, the plaintiff stooped and took the dog's collar in her right hand and held it. As she undid the chain with her other hand, the dog suddenly ran toward the door, pulling on the collar in the plaintiff's hand, and pulled the plaintiff over. She fell. She sustained severe injury to her right hip, and suffered repeated operations to repair the damage.

a. There is no disagreement that if the plaintiff was the "keeper" of the dog at the time, she could not maintain an action against the defendant "owner" under the statute. Hence the case turned on whether the plaintiff was in fact the keeper, and the judge ruled that there was insufficient proof of non-keepership to go to the jury. In this the judge erred. As a general rule, barring special situations, keepership involves "harboring with an assumption of custody, management and control of the dog." *Brown* v. *Bolduc*, 29 Mass. App. Ct. 909, 910 (1990), adopting the language of *Maillet* v. *Mininno*, 266 Mass. 86, 89 (1929), which cited *Boylan* v. *Everett*, 172 Mass. 453 (1899). The plaintiff's single casual act in the present case of holding a dog with a purpose to move it from one place to another does not fit easily within the general description of keepership and leaves at most an issue for decision by the triers. This lesson we can take from cases approaching the present on their facts. In *Siira* v. *Shields*, 360 Mass. 874 (1972), the plaintiff, a seventy-three year old woman, working for the defendant poodle owner then on vacation in Florida, was hurt when, while walking the dog, she was knocked down by the dog's sudden rush: the keepership question was for the jury. Another incident of help to a dog where a directed verdict denominating the person as a

keeper would be out of place: the sons of the defendant dog owner brought the dog to the plaintiff grandmother's backyard and the plaintiff, while in the process of feeding the dog, fell when the dog ran between her legs. *McEvoy* v. *Brown*, 17 Ill. App. 2d 470, 473-474, 479-480 (1958). See *O'Donnell* v. *Pollock*, 170 Mass. 441, 444 (1898); *Boylan* v. *Everett, supra*; Annot., Who "Harbors" or "Keeps" Dog Under Animal Liability Statute, 64 A.L.R.4th 963 (1988).

b. The judge was also mistaken in thinking "proximate cause" had not been shown, at least to the point of qualifying for submission to the verdict of a jury. In this connection, it would not, of course, be dispositive against the plaintiff that the dog's behavior might be thought affectionate, not malign, see *Canavan* v. *George*, 292 Mass. 245, 247 (1935), or might not have entailed any direct collision or contact with the plaintiff, see *Sherman* v. *Favour*, 1 Allen 191, 193 (1861). Decisions in dog cases were fond of marking a distinction between a "contributing cause" and a mere "condition" of the injury, see *ibid*; *Canavan* v. *George, supra* at 247-248; in these terms also the plaintiff deserved to go to the jury, for the dog's action in heading for the door has the look of a contributing cause of the plaintiff's injury, however one might choose to characterize the plaintiff's handholding of the dog's collar. The result is the same if we bring to bear a recent formulation of proximate cause. *Roberts* v. *Southwick*, 415 Mass. 465, 473 (1993).

For the reasons stated, the judgments are reversed.

2. *The Salisbury case.* The plaintiff, Ronaele Salisbury, a veterinary technician, was bitten by a dog in her care, and sued the dog's owners, Amy Smyth and others, defendants, under the dog statute, G. L. c. 140, § 155.[5] These defendants, as third-party plaintiffs, impleaded Acorn Animal Hospital (Acorn), the plaintiff's employer, as third-party defendant; they sought so-called "indemnity" from Acorn if they were held liable to the plaintiff. The judge allowed a motion for summary judgment on the part of the defendants, and correspondingly allowed a motion for summary judgment· by the third-party defendant, and dismissed the action and third-party action. We affirm.

The record was as follows. On the morning of June 8, 1995, the defendant Smyth, taken to be the owner with the other defendants of the dog Shady, a Lhasa apso, dropped her off at

[5]See note 4, *supra.*

the Acorn clinic with directions to spay her. Smyth departed the clinic after a few minutes. Shady awaited the operation in a cage in the back area of the clinic. The area was for the staff, except as pet owners were permitted to keep company with their invalided animals.

Shortly after Shady's arrival, the plaintiff, serving in her job as veterinary technician, approached Shady's cage. The plaintiff had taken courses in animal behavior and been trained in their care; she had been working at Acorn for a year and more. The plaintiff noticed that Shady had remained on leash, a sign that the dog could act up and be vicious. She coaxed Shady out of the cage with soothing voice, then walked Shady on leash to the operating room. When lifted to the operating table — the plaintiff could not recall whether she or the veterinarian, Dr. Andrew Weitzman, lifted the dog — Shady growled. Dr. Weitzman took hold of Shady on the table and asked the plaintiff to muzzle her. As the plaintiff started to apply a muzzle, Shady bit the plaintiff in the long finger of the right hand. The injuries were severe; there was tendon damage requiring surgery and the plaintiff remained limited in her activities at the time of trial. She has received worker's compensation through Acorn's insurer.

a. The plaintiff's claim against the defendant owners is unusual in that actions under the dog statute are customarily by injured persons who have had no or scant relation with the dog except for the bite or other damage, and are suing those associated with the dog as ''owners'' or ''keepers.'' Here the defendants say — and the judge found — the plaintiff was herself a keeper and so potentially liable under, rather than favored by, the strict-liability[6] statute.

Was the plaintiff properly characterized by the judge as a keeper and thus disqualified for recovery under the statute? It is true that the fact a claimant has had only brief connection with the dog weighs against a finding of statutory keepership, see *O'Donnell* v. *Pollock*, 170 Mass. at 444, and discussion of the *Perillo* case, *supra*. Here, however, several factors, recognized in the decisions, converge to speak strongly for such a finding. The owners surrendered all custody of the dog to veterinary care, cf. *Cruickshank* v. *Brockton Agric. Soc.*, 260 Mass. 283, 285 (1927). Such custody was accepted knowingly, indeed under

---

[6]That the statute imposes strict liability, see *Canavan* v. *George*, 292 Mass. at 247.

Salisbury *v.* Ferioli.

a relationship of contract, see *Murphy* v. *Buonato*, 42 Conn. App. 239, 244 (1996). The relationship was one of material benefit to those accepting custody, see *Collingill* v. *Haverhill*, 128 Mass. 218, 219 (1880); *Whittemore* v. *Thomas*, 153 Mass. 347, 350 (1891). The custody involved was an intimate one with an understood, determined objective, cf. *Collingill* v. *Haverhill*, *supra*. In all these circumstances, the statutory purpose is much better served by holding the plaintiff to be a keeper rather than the contrary. One involved in custody of a dog for medical care seems a most unlikely plaintiff under a statute intended for the benefit of outsiders who are unable to protect themselves from injury by dogs.[7] On the present record, the judge's decision was rightly taken as a matter of law. See *Whittemore* v. *Thomas*, *supra* at 349-350.

Our conclusion accords with the approach taken elsewhere on facts resembling those in the present case. The judge below cited *Armstrong* v. *Milwaukee Mut. Ins. Co.*, 202 Wis. 2d 258, 267-268 & n.7 (1996), where the court found the employee of a kennel an "owner" within a statute defining owner as "any person who owns, harbors or keeps a dog"; the court stressed that the actual owners had relinquished custody of the dog to the kennel and entrusted it to the kennel for services. Hence the employee was a keeper and could not recover.[8] "Th[e] statute is rendered meaningless if one who, in the course of their employment, exercises control over and provides care for a dog is not found to be that dog's keeper." *Ibid.*

Again in *Tschida* v. *Berdusco*, 462 N.W.2d 410 (Minn. App. Ct. 1990), the receptionist at an animal hospital, asked to bring a dog from the kennel area to the operating room, ran into trouble when she left the dog unleashed, lying sedated but awake; as she turned to pick up the leash, the dog bit her. The

[7]This statutory purpose appears from *Sherman* v. *Favour*, 1 Allen at 192; *Barrett* v. *Malden & Melrose R.R.*, 3 Allen 101, 102 (1861). At the same time, "the statute does not make fault a factor in determining whether an owner or keeper should be responsible to an injured party. The owner or keeper must pay the injured party, not because he was at fault in not properly controlling the dog or in not being aware of the dog's potential for harm, but because justice and social policy require that he bear the loss rather than the injured third party." *Maccarone* v. *Hawley*, 7 Conn. App. 19, 25 (1986).

[8]The judge below also cited authority in Florida, but the statutory setup there renders the cases, although supporting our conclusion, of limited significance. See *Wendland* v. *Akers*, 356 So. 2d 368 (Fla. Dist. Ct. App. 1978). But see *Wipperfurth* v. *Huie*, 654 So. 2d 116, 118 (Fla. 1995).

receptionist could not recover against the actual owners because she was held an "owner," defined by statute as "any person harboring or keeping a dog." *Id.* at 411. It was notable that she had "accept[ed] the delivery of possession and control from the legal owner." *Id.* at 412.

In the recent Ohio decision, Manda *vs.* Stratton, No. 98-T-0018 (Ohio App. Ct. April 30, 1999), a veterinary assistant helping in the x-ray room was bitten by the dog, and sued the owners. On the record, the court thought it a jury question whether the plaintiff was a keeper within the Ohio strict-liability statute; if she was found a keeper by jury verdict, she could not maintain the action against the dog owner; that rule had been mentioned in the earlier case of *Khamis* v. *Everson*, 88 Ohio App. 3d 220, 226-227 (1993).

The defendants seem to persist in an idea that even one held to be a keeper may be able to recover for an injury against the owner. But this is contradicted by the foregoing cited cases. See also *Murphy* v. *Buonato*, 42 Conn. App. at 249-250. Cf. *Maillet* v. *Mininno*, 266 Mass. at 88.

b. Since the action fails against the defendant owners, the question of any rights on their part against Acorn becomes empty. See, however, on the matter of so-called "indemnity," *Maccarone* v. *Hawley*, 7 Conn. App. 19, 25 (1986).

The judgment for the defendant Cameron is reversed; the judgment by consent for the defendant Providence Washington Insurance Company is vacated; and the case is remanded to the Superior Court.[9]

*So ordered.*

---

[9]The judge had denied the plaintiff's pretrial motion for summary judgment. The plaintiff asks us to reconsider that motion and to allow it, instead of remitting the case for retrial. The practice is against reverting to a denied summary judgment motion where the action has thereafter gone to trial. See *Deerskin Trading Post, Inc.* v. *Spencer Press, Inc.*, 398 Mass. 118, 126 (1986).