2003 ME 90

**James PARRISH**

v.

**Charles WRIGHT et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 29, 2003.

Decided: July 17, 2003.

Sandra Hylander Collier, Ellsworth, for plaintiff.

Samuel W. Lanham, Cuddy & Lanham, Bangor, William B. Entwisle, Ellsworth, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] James Parrish appeals from a summary judgment by the Superior Court (Hancock County, *Mead, J.*) that deter-

mined that Charles and Edith Wright were not liable for injuries suffered by Parrish after he was bitten by their adult daughter's dog. The incident occurred near the Wrights' summer residence, but while the Wrights were residing in Georgia. Parrish argues that the court erred in determining that (1) the Wrights were not keepers of the dog within the meaning of 7 M.R.S.A. § 3961 (Pamph.1999); (2) there were no genuine issues of material fact as to whether the Wrights were subject to common law liability for possessing a dog with dangerous propensities; and (3) the Wrights had no duty to require their daughter to keep her dog leashed. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] The following case history is based on statements of material facts filed by the parties. Charles and Edith Wright own a home on Little Cranberry Island where they live three to four months per year. For the remainder of the year, they live in Atlanta, Georgia. Margaret "Marnie" Wright, a resident of Ellsworth, is the Wrights' adult daughter. Marnie has a key to the residence and her parents' permission to use the premises as she pleases. Marnie uses the Wrights' house approximately once a month for a weekend. Marnie typically brings her dog, Augustus, with her and her parents have imposed no rules regarding the dog. The Wrights had no knowledge, prior to May 2000, of Augustus ever having bitten either an animal or a human, although they were aware of one incident in Georgia several years before when Augustus had been attacked by two other dogs.

[¶ 3] On Memorial Day weekend in 2000, while the Wrights were in Atlanta, Marnie went to the Little Cranberry Island home with her dog. On the morning of May 29, Marnie let Augustus out of the back door of the house and into the yard. Sometime within the next half-hour, James Parrish walked up the street with his Rottweiler, Max. According to Parrish, Augustus ran from the Wrights' property and a dog fight ensued. Parrish fell while trying to pull Max away from Augustus. Parrish indicated that Augustus then proceeded to bite Parrish on his right arm. In the scuffle, Parrish suffered several injuries.

[¶ 4] Parrish filed a three-count complaint in the Superior Court against both Marnie and the Wrights, alleging liability pursuant to 7 M.R.S.A. § 3961, common-law strict liability for damage done by animals, and common-law negligence.

[¶ 5] Parrish asserted that he had a conversation with a woman who had stated that she was not surprised that Augustus had bitten him, because Marnie had ignored her requests to keep Augustus leashed. Parrish also asserted that this woman stated that Augustus had killed another dog in Atlanta. Parrish acknowledged that he based his allegations that Charles and Edith Wright had knowledge of Augustus's vicious propensity solely on this woman's statements.

[¶ 6] The Wrights filed a motion for summary judgment with an attached memorandum of law, a statement of material facts, and an affidavit of the woman whose statements Parrish had relied upon. Her affidavit, referenced in the Wrights' statement of material facts, stated that she had never seen or had any information that Augustus had ever attacked another animal or human, and that she did not tell Parrish that Augustus had killed another dog in Atlanta.

[¶ 7] The Superior Court granted the Wrights' motion for summary judgment. Parish later filed a motion to dismiss Marnie Wright as a defendant in this action. The court entered an order in accordance

with Parrish's motion, and this appeal followed.

## II. LEGAL ANALYSIS

■■■■ [¶ 8] We review a summary judgment de novo, viewing the evidence in the light most favorable to the party against whom judgment has been entered to decide whether the parties' statements of material facts and the referenced record evidence reveal a genuine issue of material fact. *Rogers v. Jackson*, 2002 ME 140, ¶ 5, 804 A.2d 379, 380. A material fact is one that has "the potential to affect the outcome of the suit." *Bay View Bank v. Highland Golf Mortgagees Realty Trust*, 2002 ME 178, ¶ 9, 814 A.2d 449, 452. "A genuine issue exists when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Id.*

[¶ 9] All three counts of Parrish's complaint share the allegations that: (1) Marnie Wright was the owner, keeper and custodian of Augustus; (2) the Wrights were residents of Georgia and owners of real estate in Isleford, Maine; and (3) the Wrights, with the knowledge that Marnie allowed Augustus to roam unleashed, and that Augustus had a vicious propensity, permitted Marnie and Augustus to occasionally "occupy" their property.

■■■ [¶ 10] Count I of Parrish's complaint grounds the Wrights' liability on 7 M.R.S.A. § 3961.[1] Parrish argues that Marnie Wright, as the "owner and keeper of Augustus," and the Wrights, "as owners of the residence," owed Parrish a duty of care that included keeping Augustus leashed and/or warning Parrish of Augustus's dangerous propensity and whereabouts. Although Parrish concedes that Marnie owns Augustus, he argues that there is a genuine issue of material fact as to whether the Wrights are liable as "keepers" of Augustus.

[¶ 11] Parrish cites *McCosker v. Weatherbee*, 100 Me. 25, 59 A. 1019 (1905) and *Mitchell v. Chase*, 87 Me. 172, 32 A. 867 (1895), to support his contention that the Wrights were "keepers" of Augustus within the meaning of 7 M.R.S.A. § 3961. In *McCosker*, we found that the defendant did not have "care, custody and control of [the] dog [without which] he cannot be charged as keeper." 100 Me. at 26, 59 A. at 1019. Applying the definition of "keeper" stated in *McCosker*, the Wrights were not the keepers of Augustus because they did not have "care, custody and control" of him. The Wrights were not even in the State of Maine at the time of the incident.

[¶ 12] The portion of *Mitchell v. Chase* upon which Parrish relies exists in a quotation from the trial court's jury instructions that precedes the opinion in the case. *Mitchell*, 87 Me. at 174, 32 A. at 868. Even Parrish's reliance on the jury instruction is misplaced, because the Wrights did not "entice" Augustus onto their property. It is undisputed that Marnie brought Augustus to her parents' home.

[¶ 13] Parrish also relies on *Lewis v. Penney*, 632 A.2d 439 (Me.1993). The issue in *Lewis*, however, was not whether there was sufficient evidence to find that the parents were "keepers" of the dog, but

---

1. 7 M.R.S.A. § 3961 (Pamph.1999) provided:

When an animal damages a person or that person's property due to negligence of the animal's owner or keeper, the owner or keeper of that animal is liable in a civil action to the person injured for the amount of damage done if the damage was not occasioned through the fault of the person injured.

Section 3961 was completely rewritten after this cause of action arose by P.L.2001, ch. 220, § 1, although both versions focus responsibility on the "owner or keeper" of a dog.

whether the trial court erred when it applied contributory negligence rather than comparative fault to the plaintiff's claim pursuant to the former dog bite statute, 7 M.R.S.A. § 3651 (1979), *repealed by* P.L. 1987, ch. 383, § 2. *Lewis,* 632 A.2d at 442. *Lewis* is also factually distinguishable from this case, because the adult daughter in *Lewis,* unlike Marnie Wright, permanently lived at her parents' home. *Id.* at 440.

■ [¶ 14] The RESTATEMENT (SECOND) OF TORTS, § 514 cmt. a (1977),[2] also does not support a finding that the Wrights are liable for Parrish's injuries, because Augustus was not a member of the Wrights' household. Despite Parrish's contention, the fact that the Wrights temporarily cared for Augustus some eight years before does not qualify Augustus as a member of the Wrights' household in 2000. Furthermore, although comment *a* to Restatement section 514 indicates that a head of the household may harbor the animal of another household member by permitting that member to keep the animal in the house or on the premises, Marnie Wright was not a member of the Wrights' household. She resided separately in Ellsworth and visited the Wrights' home occasionally on weekends.

■ [¶ 15] In Count II, Parrish claims damages pursuant to the common-law liability for damage done by animals. Parrish argues that the court erred in granting summary judgment on Count II because there was a genuine issue of material fact as to the Wrights' knowledge of Augustus's dangerous propensities.

[¶ 16] In *Young v. Proctor,* 495 A.2d 828, 830 (Me.1985), we adopted the RESTATEMENT (SECOND) OF TORTS § 509 (1977)[3] to clarify strict liability under the

2. The RESTATEMENT (SECOND) OF TORTS § 514 (1977) *provides:*

One, who, although not in possession, harbors a wild animal or an abnormally dangerous domestic animal, is subject to the same liability as if he were in possession of it.

Comment:

a. The rules that determine the liability of one who as possessor keeps a wild animal or an abnormally dangerous domestic animal are stated in §§ 507–513. The rule stated in this Section imposes the same liability upon one who, although neither the owner nor the possessor of the animal, harbors it by making it part of his household. This he may do by permitting a member of his household, including those servants who are regarded as members, to keep the animal either in the house or on the premises that are occupied as the home of the family group of which he is the head. Thus a person harbors a dog or cat by permitting his wife, son or household servant to keep it in the house or on a part of his land that is occupied by the family as a group. On the other hand, the possession of the land on which the animal is kept, even when coupled with permission given to a third person to keep it, is not enough to make the possessor of the land liable as a harborer of the animal. Thus a father, on whose land his son lives in a separate residence, does not harbor a dog kept by his son, although he has the power to prohibit the dog from being kept and fails to exercise the power or even if he presents the dog to his son to be so kept. The same is true when a master permits his servant to keep a dog in a house or part of the premises that is given over to the exclusive occupation of his servant. So, too, he does not become a harborer of a dog that he permits a friend to keep on his land unless he takes it into his home and thus makes it, as it were, a member of his household. Similarly, a shopkeeper does not harbor dogs that he permits his customers to bring into his shop, nor does the permission given to a particular motorist or to motorists in general to camp on a part of the possessor's land make him the harborer of those animals which, as he knows, the motorists are likely to bring upon the land.

3. RESTATEMENT (SECOND) OF TORTS § 509 (1977) *provides:*

(1) A possessor of a domestic animal that he knows or has reason to know has dan-

common law for damages done by a dog. Section 509 addresses liability of "[a] possessor of a domestic animal . . . ." Section 509 does not apply to this case because the Wrights were not "a possessor" of Augustus at the time of the incident.

[¶ 17] Count III of Parrish's complaint presents a negligence claim. Parrish alleges that the Wrights had a duty to keep Augustus on a leash, to train Augustus and to warn Parrish of either the dog's dangerous propensity or its whereabouts. Parrish also alleges that the Wrights breached their duties, which proximately caused his injuries.

[¶ 18] In *Henry v. Brown*, 495 A.2d 324, 327 (Me.1985) (vacating a summary judgment dismissing the claim), we recognized an independent claim on a theory of negligence for damages done by a dog. In the instant case, Parrish bore the burden of making a prima facie showing of each element of his negligence claim in order to avoid summary judgment. *See Champagne v. Mid–Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842, 845. To establish a prima facie case of negligence, a plaintiff must establish that a duty was owed, the duty was breached, and the plaintiff's injuries or damages were proxi-

mately caused by the breach of that duty. *Mastriano v. Blyer*, 2001 ME 134, ¶ 11, 779 A.2d 951, 954. Whether a duty exists is a question of law that we review de novo. *Id.* "A duty is an obligation, to which the law will give recognition and effect, to conform to a particular manner of conduct toward another." *Id.* ¶ 12 (internal quotation marks omitted). The question of whether the duty has been breached is generally for the fact-finder. *Id.*

[¶ 19] Maine law has not established a duty of a property owner not on the premises to require invitees or licensees to control their dogs. *See Stewart v. Aldrich*, 2002 ME 16, ¶¶ 11–17, 788 A.2d 603, 607–08 (holding that a landlord is not liable for injuries caused by a tenant's dog in the tenant's apartment). Moreover, Maine law has not established a duty of a property owner to train the animals of those the owner permits onto the property.

[¶ 20] A duty to those outside one's property with respect to dangerous conditions on the land first requires that the "possessor realizes or should realize [that the condition] will involve an unreasonable risk" of harm.[4] Parrish presents

gerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm.
(2) This liability is limited to harm that results from the abnormally dangerous propensity of which the possessor knows or has reason to know.

4. Parrish was not on the Wrights' land and, therefore, a duty to him is different than a duty to an individual lawfully on the landowner's land. For those lawfully on the landowner's land, we have recognized a property owner's liability for dangerous conditions on the land not obvious to the invitees. *See Grover v. Boise Cascade Corp.*, 2003 ME 45, ¶¶ 6–9, 819 A.2d 322, 323.

Liability to those outside the property for dangerous conditions on the property is described in the RESTATEMENT (SECOND) OF TORTS § 364 (1965), which provides:
A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm, if
(a) the possessor has created the condition, or
(b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession, or
(c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken

no evidence that the Wrights had knowledge of any dangerous propensity of the dog. Accordingly, the Superior Court properly granted summary judgment on Parrish's negligence claim.

The entry is:

Judgment affirmed.

to make the condition safe after the possessor knows or should know of it.

*See also Bangor & Aroostook R.R., Co. v. Ship Fernview,* 455 F.Supp. 1043, 1057–58 (D.Me.1978) (stating that one who negligently releases steam or another opaque gas that obstructs visibility on a public highway is liable for damages proximately caused by the release).