Jaclyn Marie CARLSON, Appellant,

v.

Edward FRIDAY, Respondent,

Wendy Chenvert, d/b/a Hot Dogs Groomery, Defendant.

No. A04–804.

Court of Appeals of Minnesota.

April 26, 2005.

William D. Siegel, Barna, Guzy & Steffen, Ltd., Coon Rapids, MN, for appellant.

Paul S. Hopewell, Minneapolis, MN, for respondent.

Considered and decided by
SHUMAKER, Presiding Judge,
TOUSSAINT, Chief Judge; and
DIETZEN, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

Appellant sued respondent for damages because of injuries she suffered from being bitten while grooming respondent's dog, claiming strict liability under Minn.Stat. § 347.22 (2004), the dog-bite statute. The district court granted respondent's summary judgment motion, dismissing appellant's complaint with prejudice. This appeal followed.

Because appellant was the keeper of respondent's dog for purposes of secondary ownership under the dog-bite statute, the statute does not permit her to bring an action against respondent, the primary legal owner of the dog. We affirm.

## FACTS

Respondent Edward Friday is the owner of two German Shepherd/Golden Retriever mixed-breed dogs named Lady and Lucky. In January 2002, Friday first employed Hot Dogs Groomery to bathe his dogs and cut their nails. In March 2002, appellant Jaclyn Marie Carlson (n/k/a Jaclyn Marie Gilbert) began working as an independent contractor, grooming dogs at Hot Dogs. As part of her three-month dog-grooming training, Carlson learned to keep dogs from running loose and disrupting other dogs and how to muzzle a dog whenever it showed signs of aggression. She also learned to contact or transport a dog to a local veterinarian if it ever required medical attention.

In June 2002, Friday returned to Hot Dogs with his two dogs to have them bathed and their nails cut, this time by Carlson. Upon their arrival, Carlson kenneled Friday's dogs while she finished grooming another dog. After finishing with the other dog, Carlson led Lucky from his kennel to the bathing area. Carlson bathed Lucky and then placed him on a grooming cart where she dried him with a towel. Lucky seemed to enjoy the service, but as Carlson began pulling the cart toward the drying area, he suddenly bit her on her face. The wounds to Carlson's face required extensive stitching and left two visible scars.

## ISSUE

Minn.Stat. § 347.22 (2004), the dog-bite statute, contemplates two to three parties to a dog-bite action: the victim, the primary legal owner of the dog, and sometimes a secondary owner who is "harboring" or "keeping" the dog. The statute prohibits secondary owners from maintaining actions against non-negligent primary legal owners. Was appellant the keeper of respondent's dog for purposes of secondary ownership under the statute?

## ANALYSIS

On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether the district court erred by misapplying the law. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992). We review de novo questions of statutory construction. *Correll v. Distinctive Dental Servs.,*

*P.A.*, 607 N.W.2d 440, 443 (Minn.2000). The application of a statute to undisputed facts is also a question of law, which we review de novo. *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn.1996). The dispositive facts are not in dispute here.

Carlson argues that she was not the keeper of Friday's dog for purposes of secondary ownership under Minn.Stat. § 347.22 (2004), the dog-bite statute, because her brief and limited contact with Lucky was insufficient to establish the kind of control that a dog owner generally has over his own dog. Carlson concedes that if she were Lucky's keeper, she would not be able to maintain an action against Friday under the statute.

The district court granted summary judgment as a matter of law in favor of Friday, concluding that Carlson was not entitled to recovery because (1) she was the keeper of Friday's dog for purposes of secondary ownership under the dog-bite statute; and (2) the statute prohibits a secondary owner from maintaining an action against the primary legal owner when the dog injures the secondary owner while in her possession.

■ Minnesota's dog-bite statute states: If a dog, without provocation, attacks or injures any person who is acting peaceably in any place where the person may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. The term "owner" includes any person harboring or keeping a dog but the owner shall be primarily liable. The term "dog" includes both male and female of the canine species.

Minn.Stat. § 347.22. We have held that "[t]he statute contemplates either two or three parties to a dog bite action: the third party victim, the first party legal owner, and in some cases, the second party

harborer or keeper," permitting third party victims "to maintain an action, not only against the legal owners of the dog, but also against any other parties, [that is,] 'owners,' who have possession and control of the dog." *Tschida v. Berdusco*, 462 N.W.2d 410, 411 (Minn.App.1990), *review denied* (Minn. Dec. 20, 1990). But the statute does not permit a secondary owner, who was "harboring" or "keeping" a dog at the time of the injury, to maintain an action against another owner. *Id.* at 412–13.

Minnesota courts have twice specifically addressed the meaning of "keeping" for purposes of the dog-bite statute. *Verrett v. Silver*, 309 Minn. 275, 244 N.W.2d 147 (1976) (holding homeowner not keeper of friend's dog when friend and dog temporarily stayed with homeowner while homeowner was on vacation); *Kent v. Block*, 623 N.W.2d 906 (Minn.App.2001) (holding dogsitter keeper of dog when she voluntarily assumed individual responsibility for care of dog while dog-owner was on vacation). In *Verrett*, the supreme court upheld a set of jury instructions regarding the dog-bite statute, which stated that "[o]ne becomes the keeper of a dog only when he either with or without the owner's permission undertakes to manage, control or care for it as dog owners in general are accustomed to do." *Verrett*, 244 N.W.2d at 149. In *Kent*, we held that the concept of keeping "cannot be equated with long-term proprietary control and must include voluntary acceptance of temporary responsibility for the dog." *Kent*, 623 N.W.2d at 909.

In *Tschida*, a case we decided after *Verrett* but before *Kent*, we did not distinguish between "harboring" and "keeping" but held that the dog-bite statute contemplates "as an owner a second party who harbors or keeps a dog after accepting the delivery of possession and control from the legal owner." *Tschida*, 462 N.W.2d at 412–413

(holding veterinarian's assistant secondary owner of dog in her care).

■ Following these cases, we hold that "keeping" for purposes of secondary ownership under the dog-bite statute involves (1) a voluntary acceptance (2) of temporary responsibility (3) as it relates to the management, control, or care of the dog; (4) exercised in a manner generally similar to that of the dog's primary legal owner.

■ Applying this definition, it is clear that Carlson was Lucky's keeper. As an independent contractor, Carlson voluntarily accepted temporary responsibility for Friday's dogs when she greeted Friday at Hot Dogs and agreed to bathe his dogs and clip their nails. Carlson exercised this responsibility in terms of management and control by kenneling the dogs while she finished a previous job, removing Lucky and leading him to the bathing area, securing him in the tub while she bathed him, and securing him on the grooming table while she dried him with a towel.

Carlson both exhibited and was prepared to exhibit basic attributes of ownership. She kept Lucky from running loose and disrupting other dogs at Hot Dogs. And she was prepared to muzzle Lucky if he showed signs of aggression and even seek veterinarian assistance if needed.

## DECISION

Because appellant was "keeping" respondent's dogs for purposes of secondary ownership under Minn.Stat. § 347.22 (2004), the dog-bite statute, the district court did not err by granting respondent's motion for summary judgment.

**Affirmed.**