2012 ME 106

**Alisa MORGAN**

v.

**Robert MARQUIS et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: June 27, 2012.

Decided: Aug. 9, 2012.

Arthur J. Greif, Esq., and Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, for appellant Alisa Morgan.

Paul W. Chaiken, Esq., and John K. Hamer, Esq., Rudman Winchell, LLC, Bangor, for appellees Robert Marquis and Ann Marquis.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

MEAD, J.

[¶1] Alisa Morgan appeals from a summary judgment entered by the Superior Court (Penobscot County, *Cuddy, J.*) in favor of Robert and Ann Marquis on Morgan's complaint alleging that she is entitled to damages on theories of common law strict liability, common law negligence, and statutory liability after she was bitten by the Marquises' dog.[1] Because we conclude that genuine issues of material fact remain concerning Morgan's common law negligence and statutory liability claims, we vacate the judgment as to those counts.

## I. BACKGROUND

[¶2] The historical facts are largely undisputed. In January 2005, Robert and Ann Marquis adopted a dog they named Beans from an out of state rescue program. Beans was part pit bull. None of the information the Marquises received about Beans from the program indicated that he was dangerous. When the Marquises adopted Beans, the dog was friendly and interacted well with people and other dogs, although he was "very focused" on the family cats. He was not aggressive toward anyone, even when played with roughly, but the Marquises were still cautious with him when he was around new people. In the spring of 2005, Beans completed two obedience classes. Prior to the incident at issue in this case, another family had looked after Beans several times when the Marquises were away.

[¶3] In 2008, Alisa Morgan, who had known the Marquises since childhood, visited them at their home and, with Beans in the room, proposed that they trade animal care services so they could each attend their sons' respective military basic training graduations. The Marquises agreed. Morgan, an experienced dog owner and pet-sitter, later came to the Marquises' home to meet their animals and learn their routine; over the course of approximately an hour she walked Beans, interacted with him, controlled him with voice commands, and followed him into the house. Beans responded well on the leash to Morgan. Ann Marquis did not detect any stress from the dog or observe any unfriendly behavior during this process, and Morgan declined the opportunity for a second orientation session. The Marquises never told Morgan that Beans was part pit bull.

[¶4] The Marquises departed on their trip at around 5:00 p.m. on October 15, 2008. Morgan arrived at around 7:00 p.m. and entered the dark kitchen. She saw Beans sitting off to the side; he was not acting aggressively. Morgan turned on

---

1. The judgment also dismissed as duplicative two counts alleging negligent failure to warn and strict liability failure to warn. Morgan has not advanced any argument that the dismissals were erroneous, and we do not consider them further. *See York Hosp. v. Dep't of Health & Human Servs.*, 2008 ME 165, ¶29, 959 A.2d 67.

the kitchen light over the stove, spoke to Beans, and reached down to pet him. The dog lurched up, bit her in the face, and then retreated. The Marquises acknowledge that leaning down to pet a dog is not an aggressive act. Morgan went to the bathroom, called 911, and waited some fifteen minutes for EMTs to arrive; during that time Beans stayed in the living room, was not aggressive, and did not pursue her. She later told Ann Marquis that she felt she had "gotten in the dog's space" or "gotten in the dog's face."

[¶ 5] In October 2010, Morgan filed suit against the Marquises. As amended, the complaint asserted that as a result of being bitten she sustained potentially permanent facial injuries requiring surgery. The complaint sought damages on three surviving theories: (1) statutory liability pursuant to 7 M.R.S. § 3961(1) (2011); [2] (2) common law strict liability; and (3) negligence. The Marquises moved for summary judgment. The court granted the Marquises' motion and entered summary judgment in their favor in December 2011. This appeal followed.

## II. DISCUSSION

 [¶ 6] Applying a well-established standard,

[w]e review a summary judgment de novo, viewing the evidence in the light most favorable to the party against whom judgment has been entered to decide whether the parties' statements of material facts and the referenced record evidence reveal a genuine issue of material fact. A material fact is one that has the potential to affect the outcome of the suit. A genuine issue exists when sufficient evidence requires a factfinder to choose between competing versions of the truth at trial.

*Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778(citations and quotation marks omitted). Morgan contends that genuine issues of material fact remain as to each of her claims.[3] We examine those claims in turn.

### A. Common Law Strict Liability

[¶ 7] We have adopted the Restatement (Second) of Torts § 509 to analyze common law strict liability for damages done by a dog. *Parrish*, 2003 ME 90, ¶ 16, 828 A.2d 778 (citing *Young v. Proctor*, 495 A.2d 828 (Me.1985)). The Restatement provides:

§ 509 Harm Done by Abnormally Dangerous Domestic Animals

(1) A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm.

(2) This liability is limited to harm that results from the abnormally dangerous

2. Title 7 M.R.S. § 3961(1) (2011) provides:
When an animal damages a person or that person's property due to negligence of the animal's owner or keeper, the owner or keeper of that animal is liable in a civil action to the person injured for the amount of damage done if the damage was not occasioned through the fault of the person injured.

3. Morgan also urges us to find that the Marquises' filing with the trial court of a tendered M.R. Civ. P. 68 offer of judgment—once while their motion for summary judgment was pending and again after she rejected the offer—was an improper attempt to influence the court. Although we agree with Morgan that such an offer should not be filed with a court unless accepted, there is no indication in the record that the court in this case was influenced in any way by the filings, and Morgan acknowledges that the error is not sufficient standing alone to warrant vacating the summary judgment.

propensity of which the possessor knows or has reason to know.

Restatement (Second) of Torts § 509 (1977).

[¶ 8] The trial court found that the Marquises were entitled to summary judgment on this claim because the law does not recognize that pit bulls are *per se* abnormally dangerous to the class of domestic dogs, and "[t]here are no disputed facts suggesting that as to this dog ... Defendants knew that the dog was or could be dangerous." The court's determination is correct. A comment to section 509 explains that

> [t]he great majority of dogs are harmless, and the possession of characteristics dangerous to mankind or to livestock is properly regarded as abnormal to them. *Consequently the possessor of a dog is not liable for its biting a person ... unless he has reason to know that it is likely to do so.*

Restatement (Second) of Torts § 509 cmt. f (emphasis added).

[¶ 9] The summary judgment record does not support a finding that the Marquises knew that their dog, as opposed to a pit bull mix in general, was likely to bite a human absent provocation. Indeed, the facts recited above concerning the dog's history are to the contrary. *See Young*, 495 A.2d at 830 (stating that a dog owner must have actual knowledge of a dog's dangerous propensities for strict common law liability to attach; what the owner should have known is insufficient). The facts that Morgan points to in her brief—that Beans had been kept chained to a porch at his previous home, had been removed because a mailman apparently became concerned about the dog's welfare, liked to climb fences, was focused on cats, was sometimes chained to the Marquises' barn, and was treated by the Marquises with caution around new people—are insufficient as a matter of law to establish that the Marquises *knew* that Beans was likely to bite Morgan or someone else.

B. Common Law Negligence

[¶ 10] We have additionally recognized an independent claim on a theory of negligence for damages done by a dog. *Parrish*, 2003 ME 90, ¶ 18, 828 A.2d 778 (citing *Henry v. Brown*, 495 A.2d 324, 327 (Me.1985)). In order to avoid summary judgment on this claim, Morgan was required to establish a prima facie case of negligence: duty, breach, and causation. *Id.* As to the first element, the Marquises had a duty to protect Morgan from an unreasonable risk of harm posed by the foreseeable actions of their dog. *See Henry*, 495 A.2d at 327. As to the third, if that duty was breached, then the dog's actions unquestionably caused Morgan's injury. Concerning the element of breach, "[t]he question of whether [a] duty has been breached is generally for the fact-finder." *Parrish*, 2003 ME 90, ¶ 18, 828 A.2d 778; *see Lewis v. Penney*, 632 A.2d 439, 442 (Me.1993) (stating that the exercise of due care "is a question of fact for the jury").

[¶ 11] Morgan has advanced facts concerning the characteristics of pit bulls in general, and Beans in particular, that she asserts made the risk of harm to her unreasonable, and her injuries foreseeable, including the fact that the Marquises did not tell her that Beans was part pit bull. Although those assertions are not sufficient to survive the Restatement section 509 test for common law strict liability because that test requires a showing that the Marquises knew that Beans was dangerous, the question of breach of duty on an ordinary negligence claim, where Morgan may argue that the Marquises should have known about Beans's potential to bite, *see Henry*, 495 A.2d at 327, is for the fact-finder. Thus, viewing the facts in the

light most favorable to Morgan, summary judgment on this count was not available to the Marquises.

## C. Statutory Liability

[¶ 12] Morgan also contends that she is entitled to damages pursuant to the statutory liability created by 7 M.R.S. § 3961(1). In reviewing the trial court's entry of summary judgment on this claim, we first address the Marquises' argument that they are entitled to a judgment as a matter of law, see M.R. Civ. P. 56(c), because Morgan was the dog's "keeper" at the time she was bitten, and section 3961(1) only allows recovery by injured third parties, not the dog's "owner or keeper," 7 M.R.S. § 3961(1). A "keeper" is defined by statute as "a person in possession or control of a dog or other animal." 7 M.R.S. § 3907(16) (2011). Morgan contends that it is immaterial whether she was the dog's "keeper" because section 3961(1) applies "[w]hen an animal damages a person," she is "a person" who was damaged by an animal, and she is therefore entitled to bring a claim under the statute.

[¶ 13] Although we have not had occasion to decide this issue, other courts construing strict liability statutes similar to Maine's have uniformly concluded that owners or keepers of dogs are not protected parties, and Morgan points to no authority to the contrary. For example, in *Armstrong v. Milwaukee Mut. Ins. Co.*, 202 Wis.2d 258, 549 N.W.2d 723 (1996), the Wisconsin Supreme Court held that "a person acting in the capacity as the dog's keeper cannot collect damages" because "the purpose of the statute is to protect those people who are not in a position to control the dog." [4] *Id.* at 728. The court pointed out that even when statutory strict liability is unavailable, the injured party can still pursue a common law negligence claim—just as Morgan has done in this case. *Id.* at 728 n. 8.

[¶ 14] We agree with the reasoning of the other courts that have considered this issue and hold that the keeper of a dog may not recover damages under 7 M.R.S. § 3961(1). To accept Morgan's argument, we would be required to conclude that the Legislature not only intended to allow a dog's keeper to recover from its owner, but also to allow, because he is likewise "a person," the owner of a dog to recover statutory damages from its keeper, or even from another co-owner, after being bitten by his own dog—a nonsensical result. *See Adoption of Tobias D.*, 2012 ME 45, ¶ 15, 40 A.3d 990 (stating that "[a]ny interpretation [of a statute] that produces absurd, illogical or inconsistent results must be rejected" (quotation marks omitted)); *Murphy v. Buonato*, 42 Conn. App. 239, 679 A.2d 411, 417–18 (1996) (dis-

---

4. *See also Murphy v. Buonato*, 42 Conn.App. 239, 679 A.2d 411, 417–18 (1996); *Docherty v. Sadler*, 293 Ill.App.3d 892, 228 Ill.Dec. 460, 689 N.E.2d 332, 335 (1997) (holding that a ten-year-old boy injured by a dog while caring for it was not protected by state's strict liability statute); *Wilcoxen v. Paige*, 174 Ill.App.3d 541, 124 Ill.Dec. 213, 528 N.E.2d 1104, 1106 (1988); *Salisbury v. Ferioli*, 49 Mass.App.Ct. 485, 730 N.E.2d 373, 375, 377 (2000); *Youngblood v. Harrington*, No. 97–0907, 1998 WL 1181766, at *1–3, 1998 Mass.Super. LEXIS 505, at *4–7 (Mass.Super.Ct. Aug. 25, 1998) (also collecting cases); *Carlson v. Friday*, 694 N.W.2d 828, 830 (Minn.Ct.App.2005); *Tschida v. Berdusco*, 462 N.W.2d 410, 412–13 (Minn.Ct.App.1990), *overruled on other grounds by Anderson v. Christopherson*, 816 N.W.2d 626 (Minn.2012); *Manda v. Stratton*, No. 98–T–0018, 1999 WL 266613, at *3, 1999 Ohio App. LEXIS 2018, at *7 (Ohio Ct.App. April 30, 1999); *Johnson v. Allonas*, 116 Ohio App.3d 447, 688 N.E.2d 549, 550–51 (1996); *Khamis v. Everson*, 88 Ohio App.3d 220, 623 N.E.2d 683, 687 (1993) ("We conclude that by enacting [the strict liability statute], the legislature intended to protect those *people who are not in a position to control the dog.*").

cussing "bizarre results" if suits are allowed between owners, keepers, and co-owners); *Khamis v. Everson*, 88 Ohio App.3d 220, 623 N.E.2d 683, 687 (1993) (discussing "absurd consequences" and "foolish results" of a holding allowing suits between parties in a position to control a dog). It is apparent to us that the Legislature intended "to protect those people who are not in a position to control the dog," *Armstrong*, 549 N.W.2d at 728, which excludes a dog's keeper, *see* 7 M.R.S. § 3907(16).

[¶ 15] The key question then becomes whether Morgan was the dog's keeper when she was bitten. If she was, as the trial court found, then the Marquises were entitled to a judgment as a matter of law; if she was not, then Morgan may potentially recover damages under section 3961(1). In posing that ultimate question, however, we must first consider a second, preliminary question: is the determination of whether Morgan was the dog's keeper one of law that could be made by the court, or one of fact that must be left to the fact-finder?

[¶ 16] Whether one's status as a dog's "keeper" is a question of fact or a matter of law is not entirely clear from our prior decisions. In *Lewis v. Penney*, the question was submitted to the jury on a special verdict form; the jury then found as a fact that the defendants were the owners or keepers of the dog at issue. 632 A.2d at 441–42 & n. 3. In *Parrish*, however, analyzing the plaintiff's contention that there remained a genuine issue of material fact concerning whether the defendants were

the "keepers" of the dog that bit him, we concluded from the summary judgment record that "the [defendants] were not the keepers of [the dog] because they did not have 'care, custody and control' of him." 2003 ME 90, ¶¶ 10–11, 828 A.2d 778.

■ [¶ 17] *Parrish* is distinguishable from this case because there the purported keepers, who did not own the dog, were in Georgia when the dog attack occurred in Maine; accordingly, no rational jury could find that they had "possession or control" of the dog at that moment. *Id.* ¶¶ 2–3, 11; 7 M.R.S. § 3907(16). In this case, the determination of Morgan's status is a question of fact because a rational jury could determine that she had "possession or control" of Beans once she entered the Marquises' curtilage to care for him; or not until she entered the house; or not until she turned on the light, located the dog and reached to pet him; or not until she did those things and then something more; or the jury could find that Morgan never had possession or control of the dog. Because this record presents several possibilities along a timeline of events that a factfinder must choose between as the moment that Morgan had possession or control of Beans and thus assumed the status of his keeper, *see* 7 M.R.S. § 3907(16), the trial court could not make that determination as a matter of law.[5] *Cf. Inkel v. Livingston*, 2005 ME 42, ¶ 5, 869 A.2d 745 (stating that "[t]he determination of a person's legal status as a guest or a trespasser is a question of fact"). Accordingly, summary judgment was inappropriate on Morgan's statutory liability claim.

---

5. Other courts have likewise concluded that a person's status as a dog's keeper is a question of fact. *See, e.g., Murphy*, 679 A.2d at 414 (stating that "the determination of whether the plaintiff was a keeper is a question of fact"); *Manda*, 1999 WL 266613, at *4–5, 1999 Ohio App. LEXIS 2018, at *11 ("[W]hether or not the veterinarian and his assistant could be considered 'keepers' of the dog in the case at bar is a question of fact for the trier of fact.").

The entry is:

Judgment on Count I (statutory negligence) and Count III (common law negligence) vacated. Judgment otherwise affirmed. Remanded for further proceedings consistent with this opinion.