STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2001 SEP 12 P 12: 59

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-06-718
TED -CUM -9/12/2007

PARKVIEW ADVENTIST
MEDICAL CENTER,

Plaintiff,

v.

MELISSA J. STREETER, M.D. and
GREGORY GIMBEL M.D.,[1]

Defendants

**DECISION AND ORDERS ON
MOTIONS FOR SUMMARY JUDGMENT
AND TO AMEND THE COMPLAINT**

DONALD L. GARBRECHT
LAW LIBR

JAN 15 2008

## I. BEFORE THE COURT

Parkview Adventist Medical Center (Parkview) brought this action against defendant Gregory Gimbel, M.D. (Gimbel) and two other physicians to enforce a non-competition clause in their employment contracts with Parkview.

This matter comes before the court on Parkview's motion to amend the complaint[2] and defendant Dr. Gregory Gimbel's motion for summary judgment as to Parkview's complaint against him.[3]

## II. PROCEDURAL HISTORY AND BACKGROUND

Dr. Gregory Gimbel is an obstetrician/gynecologist who has been practicing in Brunswick for over twenty years. During that time, Gimbel established a medical

---

[1] The plaintiff originally filed this cause of action as three separate complaints against three separate defendants; Melissa J. Streeter, M.D. (docket no. CV-06-718), Gregory Gimbel, M.D. (docket no. CV-06-719) and Jonathon Commons, M.D. (docket no. CV-06-720). After an initial hearing for a temporary restraining order, the court ordered all matters consolidated into docket no. CV-06-718, *Parkview v. Streeter*. The action against Dr. Commons has been resolved between the parties and has been dismissed.

[2] Parkview would like to eliminate its demand for injunctive relief and add two more counts of breach of contract under different theories, one count of breach of the duty of loyalty, one count of tortious interference with advantageous relations, and one count of breach of fiduciary duty.

[3] Gimbel also has filed three counterclaims against Parkview, but has not requested summary judgment as to those allegations.

practice, known as "Merepoint," which he sold to Parkview in November of 2003. As a condition of the sale, Gimbel became an employee of Parkview, and the parties entered into an employment agreement that was amended eight months later. A portion of that agreement is the subject of this litigation.

The employment agreement was for a term of three years and contained a covenant not to compete, which prohibited Gimbel from working within 25 miles of Brunswick for a period of two years, unless certain exceptions applied. The agreement also contained a provision that required the parties to give six months notice if either intended not to renew the agreement. If notice were not given, the contract would renew itself by its own terms.

On June 22, 2006, Parkview's CEO, Ted Lewis (Lewis) sent a letter to Gimbel entitled "Notice of Non-Renewal of Employment Agreement" that served to notify Gimbel of Parkview's intent not to renew the existing contract but also expressed Parkview's desire to reach a new agreement with Gimbel. Notwithstanding Parkview's expressed intent to reach a new contract, there was no effort to do so until four months later. On October 27, 2006, Parkview sent an offer to Gimbel that allowed him only four days, until October 31, to accept the hospital's new proposal. Gimbel did not accept the offer, but instead signed a letter to board members and physicians stating his decision to terminate his employment with Parkview. Gimbel left Parkview on December 31, 2006, when his employment contract was scheduled to expire, and subsequently began working at Mid Coast Hospital (Mid Coast), also located in Brunswick. Several other employees of Parkview also left their employment, including Dr. Melissa Streeter ("Streeter")[4], the other defendant in this case. Prior to his transition to Mid Coast, but

---

[4] Streeter also signed the letter stating her intent to terminate employment.

after his letter stating his intent to leave Parkview, Gimbel publicly advertised his impending move.

On December 22, 2006, Parkview filed complaints against Streeter, Gimbel and Dr. Jonathan Commons asserting claims for breach of contract because of their alleged violation of the covenant not to compete in each of their respective employment agreements. Parkview also filed a motion for a temporary restraining order and preliminary injunction, which this court denied on December 28, 2006.

On January 2, 2007, Gimbel filed his answer and counterclaims, which were amended on January 16. Streeter filed her answer and counterclaims on January 8, 2007 and amended them on January 16. On May 31, 2007, Gimbel filed the present motion for summary judgment. After the withdrawal of Parkview's local counsel and appearance of new counsel, Parkview filed the present motion to amend the complaint on July 3, 2007.

### III. DISCUSSION

### A. Motion for Summary Judgment

### 1. Standard of Review

The standard of review on motions for summary judgment is well established. Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18,

22. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

## 2. Breach of Contract

The first step in the court's analysis is to determine whether or not the contract is ambiguous, this is a question of law. *American Protection Insurance Co. v. Acadia Insurance Co.* 2003 ME 6, ¶ 11, 814 A.2d 989, 993. If the language in the contract is "reasonably susceptible of different interpretations" it is considered ambiguous. *Id.* If the court finds that the contract language is unambiguous, "its interpretation is also a question of law," and the court will look at the "plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence." *Id.* However, if the court determines that the language is ambiguous, then the interpretation of the contract becomes a question of fact. *Id.* In that case, extrinsic evidence is admissible to show what the parties intended. *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me. 1983).

In the present case, for purposes of Gimbel's motion for summary judgment, the parties agree that the disputed contract provision is the first exception to the covenant not to compete. It reads as follows:

> Following the termination of the Physician's employment hereunder by either party for any reason, other than *(i) a termination of Physician's employment by the Hospital through nonrenewal of this Agreement or refusal to renew this Agreement upon reasonable terms* . . . Physician hereby agrees not to practice medicine within a twenty-five (25) mile radius of Brunswick, Maine, for a period of two (2) years, without the express written consent of the Hospital. (emphasis added).

Gimbel contends that this language is unambiguous and must be interpreted to mean that the covenant not to compete would not apply if Parkview terminated the employment contract by nonrenewal, or if Gimbel chose not to renew the current agreement but he offered reasonable terms that were then refused by Parkview.

He argues that because it was Parkview's unilateral choice not to renew the existing contract, as evidenced by Parkview's June 22, 2006 letter to him entitled "Notice of Non-Renewal of Employment Agreement," he is not bound by the covenant not to compete.

Parkview also argues that the non-compete clause is unambiguous,[5] but asserts that the words "termination of the Physician's employment" are most relevant to the contract's interpretation. According to the hospital, the letter that Gimbel relies on to show Parkview's decision not to renew the contract is merely the notice that was required under the contract to prevent the existing agreement from automatically renewing for another three years according to its terms. Parkview asserts that it was not an actual termination and it did not intend to terminate the employment relationship, only to renegotiate its terms. Parkview also contends that a reasonable offer for new contract terms was made to Gimbel, but he rejected that offer and instead chose to terminate his employment. The fact that Gimbel did not accept the offer would create a dispute of material fact sufficient to defeat defendant's motion for summary judgment if that were the only issue.

There is no argument by Gimbel that Parkview refused to renew the contract on reasonable terms. However, the court focuses its attention on the first portion of the sentence in the first exception to the non-compete clause, Part 20(A)(i):

20. COVENANT NOT TO COMPETE.

A. <u>Scope and Duration.</u>  Following the termination of the Physician's employment hereunder by either party for any reason, *other than* (i) a termination of Physician's employment *by the hospital* through *nonrenewal*

---

[5] In the alternative, Parkview makes an argument about what the parties intended in the event that the court finds the language to be ambiguous. However, it is not necessary to address this argument because the parties' intentions would be a question of fact for the fact-finder and would be sufficient to avoid summary judgment.

*of this Agreement . . .* Physician hereby agrees not to practice [within 25 miles and for 2 years].[6]    (emphasis added)

The June 22, 2006 letter from Lewis to Gimbel is entitled "Notice of Nonrenewal of Employment Agreement." It uses almost the exact language of the non-compete exception. The letter commences by expressing hope "to work collaboratively with you to craft a mutually satisfactory new employment agreement." It continues, however, and clearly states "we need to give you a notice of nonrenewal" to avoid an automatic renewal, and "this letter is your six-month prior written notice of the intention of Parkview *not to renew the current employment agreement* as of its expiration date, December 31, 2006." (emphasis added).

Parkview's actions are clear and unambiguous; it unequivocally announced termination of Gimbel's employment, and any renegotiation was a separate issue.

The second part of that clause, "or refusal to renew this Agreement upon reasonable terms", is in the disjunctive "or" and is of no import to termination or nonrenewal of the employment agreement. It is irrelevant whether the parties would subsequently choose to enter into a new employment relationship under a new employment contract.

Because the language of the covenant not to compete is clear and unambiguous and is not reasonably susceptible to different meanings, its interpretation is not a question of fact but of law; thus, summary judgment is appropriate.

## B. Enforceability of Covenants Not to Compete.

Gimbel also offers arguments that the covenant not to compete is not enforceable for public policy reasons. Just the mere argument of facts on this issue demonstrates a

---

[6] A later amendment to Part 20(A), July 3, 2004, does not affect this portion of the non-compete clause.

conflict; however, because the court has ruled in favor of Gimbel on the contract clause, it is unnecessary to address this issue.

## C. Motion for Leave to File an Amended Complaint

Before addressing a pending dispositive motion, the court ordinarily must address a pending motion to amend the complaint. *See Sherbert v. Remmel,* 2006 ME 116, ¶ 8, 908 A.2d 622, 624. The proposed amendment here has no effect on the issues presented relative to summary judgment; therefore no ruling is required as to any amendment relative to claims against Dr. Gimbel.

After the defendants answered, the court issued a standard Rule 16(a) Scheduling Order on January 18, 2007 setting deadlines to establish a progression towards trial and resolution of the case. The Order provided that ". . . motions to amend the pleadings shall not be filed later than 4 months from the date of this order." The deadline to file a motion to amend was May 18, 2007.

Once a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and *leave shall be freely given when justice so requires."* (emphasis added), M.R.Civ.P. 15(a). This seemingly creates an internal rules conflict with M.R.Civ.P. 16(a) which states

> after the filing of an answer . . . the court shall enter a standard scheduling order . . . . The standard scheduling order shall not be modified except in accordance with Rule 16(a)(2) or on motion for good cause shown.

Rule 16(a)(2) is limited to motions "filed within 30 days of the entry of the standard scheduling order;" thus, the test here is whether the plaintiff has demonstrated "good cause."

The trial court has discretion over whether to grant a motion to amend. *Glynn v. City of South Portland,* 640 A.2d 1065, 1067 (Me. 1994). However, unless there has been

"undue delay, bad faith, dilatory tactics, or unfair prejudice, courts should freely allow an amendment to a complaint." *Longley v. Knapp*, 1998 ME 142, ¶ 19, 713 A.2d 939, 945.

Gimbel and Streeter oppose Parkview's motion to amend and assert that the proper standard to be used in deciding the motion is excusable neglect because the court's scheduling order gave a deadline of May 18, 2007 for amendment to the pleadings.[7] Additionally, they argue that the motion to amend was filed only because Parkview has retained new local counsel, but the same out-of-state counsel continue to represent plaintiff and that no new information has been discovered that would justify the amended complaint.

The defendants insist that Parkview already knew at the time of the original complaint all of the information that forms the basis for the amended complaint, and that Parkview's failure to allege every available cause of action is not sufficient grounds for allowing the amendment.

Gimbel and Streeter also contend that the Court should be skeptical about the motion, as it was filed only after Gimbel filed a motion for summary judgment; however, the plaintiff argues, as the court has determined, the amendment has no bearing on the grounds at issue for summary judgment.

Parkview argues that it was only through the discovery process that Parkview has determined the basis for the additional claims. Although Parkview has retained new local counsel, it is unclear from the record if and when Parkview discovered the new information; whether it was previously available to plaintiff or whether it became known since the deadline for filing amendments. There are certainly new facts

---

[7] Gimbel cites Rule 6(b)(2) for his argument that the excusable neglect standard should be applied to a motion to amend that is filed after a scheduling order deadline. However, Parkview points out that the language in the scheduling order only prohibits amendment of pleadings past the deadline "unless otherwise ordered by the court."

included within the basis for the motion to amend to support the new allegations, specifically concerning solicitation of other Parkview employees by defendants to leave Parkview, use of confidential patient information to contact patients and encourage them to transfer to Mid Coast, and the time period that Parkview alleges the defendants were involved in negotiations with Mid Coast. However, it does appear that some of these facts were readily available to Parkview or could have been learned by due diligence before the deadline, such as Gimbel's allegedly disruptive behavior, the profitability (or lack thereof) of Gimbel's prior medical practice, and the marketing efforts by the defendants to inform the public of their impending transfer to Mid Coast.

It is the court's preference that a reasonable amendment ought to be allowed as all relevant issues, factual and legal, that do not cause undue prejudice to a party and do not introduce new legal theories unrelated to the basic cause of action.[8]

To the extent that the amended complaint requires the defendant to initiate any discovery that it would not otherwise perform, the court enlarges discovery for the defendant only for a period of 60 days from the date of this Order. Any post-discovery motions to be filed by the plaintiff are subject to the motion deadline established in the Scheduling Order of January 18 and as modified by any subsequent orders and are not measured by defendant's new discovery deadline.[9]

---

[8] The court is aware that it is an arbitrator in a contentious lawsuit that is very important and will have substantial consequences to the parties. It is apparent to the court that experienced and respected counsel are unnecessarily casting aspersions on the practice and tactics of their adversary. Further finger-pointing, editorializing or negative comments about counsel will result in sanctions.

Subsequent to oral argument on the present motions, counsel for plaintiff filed a "Supplement in Support of Motion for Leave to File Amended Complaint." The defendants then filed a "Motion to Strike plaintiff's 'Supplement in Support of Motion for Leave to File Amended Complaint' as an extraneous, factually unsupported pleading which need not be, and should not be reviewed by the court." Both pleadings were unnecessary. For future proceedings, no post-hearing pleadings are allowed unless they are filed at the invitation of the court. Any such filings will be returned to counsel without being docketed.

[9] The records of the clerk indicate that the present discovery deadline for all parties expires on September 18, 2007.

# IV. DECISION, ORDERS AND JUDGMENT

The clerk will make the following entries as the Decision, Judgment and Orders

of the court:

**A.** Defendant Gregory Gimbel's Motion for Summary Judgment as to plaintiff's complaint is granted.

**B.** The clerk is directed to enter judgment for defendant Gregory Gimbel on plaintiff's complaint. No costs are awarded.

**C.** The Motion to Amend the Complaint by plaintiff Parkview Adventist Medical Center is granted as to defendant Melissa Streeter. The Motion to Amend is moot as to defendant Gregory Gimbel and no Order is required.

1. Defendant Streeter is granted an additional 60 days for discovery from the date of this Order. The time period for post-discovery motions by the defendant is measured from the motion deadline established in the Scheduling Order of January 18 and as modified by any subsequent orders.[10]

2. No additional discovery period is allowed to plaintiff. The time period for post-discovery motions by the plaintiff is measured from the motion deadline established in the Scheduling Order of January 18 and as modified by any subsequent orders.

SO ORDERED.

Dated: September 12, 2007

Thomas E. Delahanty II
Justice, Superior Court

---

[10] Considering the court's future schedule, this extension should not interfere with scheduling a hearing of any post-trial motions or placing the case on a future trial list. For the information of counsel, the court's next scheduled civil calendars for motions and trials will be January/February, 2008.

TERRENCE GARMEY ESQ
NICOLE LORNZATTI ESQ
SMITH ELLIOTT SMITH & GARMEY
PO BOX 442
PORTLAND ME 04112

RICHARD MOON ESQ
VERRILL & DANA
PO BOX 586
PORTLAND ME 04112-0586

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-06-718

PARKVIEW ADVENTIST
MEDICAL CENTER,

Plaintiff,

v.

MELISSA J. STREETER M.D.,

Defendant

**DECISION AND ORDER
ON PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

DONALD L. GARBRECHT
LAW LIBRARY

IUN 1 9 2008

## I.  BEFORE THE COURT

This matter comes before the court on plaintiff Parkview Adventist Medical Center's (Parkview) motion for partial summary judgment as to Count I of the amended complaint.[1] (Claim for breach of contract by violation of the non-competition clause of the defendant's employment contract)

## II.  PROCEDURAL HISTORY AND BACKGROUND

The following facts are not in dispute.[2]  Dr. Melissa Streeter is an obstetrician/gynecologist (OB-GYN) who is currently employed at Mid-Coast Hospital (Mid Coast) in Brunswick.  Prior to joining Mid-Coast, she began her career as an employee of Merepoint Medical Associates, P.A. (Merepoint), where she worked with Dr. Gregory Gimbel (Gimbel) and Dr. Jonathan Commons (Commons).  At the time that

---

[1] The other claims against Streeter are: breach of contract (non-solicitation); breach of contract (confidentiality); tortious interference with advantageous relationships; and breach of duty of loyalty.

[2] Most of the relevant facts contained in Streeter's opposing statement of material facts may be deemed admitted because Parkview failed to support its denials or qualifications with record citations. M.R. Civ. P. 56(h)(3), (4).

she accepted the position, she understood that Gimbel and Commons were in the process of negotiating the sale of their practice to Parkview. Parkview did in fact purchase Merepoint, and Streeter, Gimbel and Commons each signed employment agreements containing non-competition clauses. These clauses prohibited the doctors from working within 25 miles of Brunswick for a period of two years after leaving Parkview, unless certain exceptions applied. Additionally, Gimbel signed an agreement whereby he would serve as the medical director for Parkview's women's health services.

Throughout her employment with Parkview, Streeter and other employees on the labor and delivery unit experienced concern about what they believed were severe staffing and equipment shortages. Indeed, Streeter was so concerned about the effect of staff shortages on patient care that she sometimes slept in the hospital overnight so that she could function as both a doctor and nurse to a patient in labor. These concerns were repeatedly brought to the attention of the administration, but they were never satisfactorily addressed. Additionally, Parkview's administration failed to consult with, or seek input from, the OB/GYN doctors about staffing, financial, administrative and other decisions that they believed impacted the health of their patients and their practice generally.

After an incident in which one of Gimbel's patients suffered a post-partum hemorrhage due to the absence of adequate nursing support, Gimbel wrote a letter to the CEO of Parkview, Ted Lewis (Lewis), to inform the hospital that it was in material breach of its contractual obligations to the OB/GYN physicians to provide them with sufficient administrative and nursing support, and proper equipment to perform their

2

jobs.[3] Gimbel sent the letter in his capacity as Medical Director, and both Gimbel and Streeter believed it to be sent on behalf of all of the physicians in the OB/GYN department. Parkview's legal counsel responded to the letter, denying that any material breach had occurred, and the physicians' needs for additional staffing and medical equipment were never met.

On June 22, 2006, Parkview sent letters to both Gimbel and Commons to inform them that their employment contracts would not be renewed when they expired on December 31st. Four days later, Streeter sent a letter to Lewis to inform him that she intended to terminate her own employment agreement within six months.

The three physicians subsequently engaged in a period of negotiations with Lewis and others to explore the possibility of a new practice arrangement. These discussions included the prospect of a purchase of the practice by the physicians from Parkview. At one point, a "virtual joint venture model" was proposed to the physicians, which Streeter rejected because she felt that it did not provide the physicians with enough control over their practice and contractual obligations. On

---

[3] Parkview disputes Streeter's characterization of the letter's purpose and content. A copy of the letter was not provided to the court as part of the record. When the court inquired about the contents of the letter at oral argument, both parties agreed it could be submitted to the court. Several days later, counsel for the defendant filed a copy together with a copy of the reply from Parkview's legal counsel and a copy of Dr. Gimbel's response.

Counsel for the plaintiff wrote to the court expressing "surprise" that the three letters were submitted because "[t]he other two letters were not requested by the court, are not part of the summary judgment record, and . . . not relevant."

At oral argument the focus was on the original letter sent by Dr. Gimbel. The court was not aware of the content of any follow-up correspondence. If there was any question as to whether the first letter was written only for Dr. Gimbel and not as the Medical Director of Women's Health, his second letter certainly raises a question of material fact. To exclude these letters from the record is to play "hide the ball" with important evidence.

The hospital did not provide a copy of the letter and did not cite to any other record material that would refute the statements contained in Gimbel's affidavit. Although the original writing is generally necessary to prove its contents under Rule 1002 of the Maine Rules of Evidence, the letter is presumably in Parkview's possession. By referring to the letters in its opposition to Parkview's motion, Streeter has put Parkview on notice that the contents of the letter will be "a subject of proof" at trial and his statements concerning the letter are therefore admissible for purposes of this analysis. *See* M.R. Evid. 1004(3).

3

October 10, 2006, Gimbel wrote a letter addressed to the president of Parkview's Medical Staff and to the Board of Trustees with a proposal to renew the existing employment agreements with certain amendments.[4] The letter also called for the removal of Lewis as CEO. On October 27, 2006, Parkview sent a letter to Streeter offering to renew her employment. This letter included Parkview's proposed terms for the new agreement, including the joint venture model that Streeter had previously refused, and gave her until October 31 at 5:00 p.m. to respond. On that day, Streeter, Gimbel, and Commons signed a letter informing the Board and fellow doctors of their decision to terminate their employment relationship with Parkview.

On December 22, 2006, Parkview filed complaints against Streeter, Gimbel and Commons[5] asserting claims for breach of contract because of their alleged violation of the covenant not to compete in each of their respective employment agreements. The complaint was timely answered.

At the outset Parkview also filed a motion for a temporary restraining order and preliminary injunction, which were denied on December 28, 2006.

The court later granted summary judgment for Gimbel, which has removed him from the suit.

Parkview's motion to amend its complaint was simultaneously granted as to additional claims against Streeter, including breach of contract (non-solicitation), breach of contract (confidentiality), tortious interference with advantageous relationships, and breach of duty of loyalty. Streeter answered the amended complaint and asserts multiple affirmative defenses and filed counterclaims for breach of contract, and

---

[4] Although the letter itself references a single contract, it also alludes to multiple physicians by the use of the first person plural pronoun "we."

[5] The case against Commons has been settled.

violation of several provisions of Maine's Wage Payment Act.[6] She also requested a declaratory judgment that the liquidated damages provision of the non-competition clause violated the same statute.

Parkview's present motion for partial summary judgment is opposed by Streeter.

## III. DISCUSSION

### A. Standard of Review

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. A party wishing to avoid summary judgment must present a prima facie case for the claim or defense that is asserted.[7] *Reliance National Indemnity v. Knowles Industrial Services*, 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

---

[6] On May 29, 2008 the parties filed a stipulation of dismissal of plaintiff's Count III of the amended complaint and Counts I and II of defendant Streeter's conterclaims.

[7] In her opposition to the motion, Streeter argues that it was Parkview's burden to establish the absence of any genuine issues of material facts for each of her affirmative defenses. There is nothing in Rule 56 that specifies whose burden it is to initially address a defendant's affirmative defenses. However, given the above quoted language, it would seem to be the non-moving defendant who bears the burden of showing that a genuine issue exists as to any of those defenses. This conclusion is logical in light of the fact that a defendant non-moving party would bear the burden at trial to prove his or her affirmative defenses, just as a non-moving plaintiff would bear the burden of proving his or her allegations.

5

## B. Breach of Contract by Streeter

Section 20(A) of Streeter's employment agreement with Parkview prohibits her from working within a twenty-five mile radius of Brunswick for two years. However, this provision is inapplicable if there is "(i) a termination of Physician's employment by the Hospital through non-renewal of [the] Agreement or refusal to renew [the] Agreement upon reasonable terms; (ii) a termination by mutual agreement; or (iii) a termination of [the] Agreement by Physician due to the Hospital's breach of a material term" of the contract.

Parkview argues that Streeter has breached her agreement by accepting a position at Mid-Coast, which is within a twenty-five mile radius of Brunswick. They further assert that none of the exceptions to the non-compete clause apply in this case. Streeter argues that genuine issues of material fact exist as to whether she should be excused from performance because of impossibility or impracticability. She also claims that there are genuine factual issues as to two of the exceptions to the covenant not to compete.

### 1. Impossibility/Impracticability

Streeter argues that she has presented sufficient evidence to show that she should be excused from performance because the conditions at Parkview made it impracticable or impossible for her to meet her contractual obligations. Because the employment contract required her to "provide high quality obstetrics and gynecology services," she contends that the quality of care issues[8] at Parkview rendered her contractual obligations impossible to perform. She further asserts that Parkview failed

---

[8] She also asserts that Lewis inappropriately asked her to write him a prescription for Viagra, but that information is the subject of a motion in limine based on the physician-patient privilege. Streeter contends that such a privilege did not arise because she is a gynecologist. Even if this information was not privileged and was somehow relevant, any probative value would be outweighed by the prejudicial effect on the defendant. The court should thus exclude any testimony about the Viagra incident.

to meet its commitment to "provide, in its good faith judgment, adequate office space, equipment, and support staff to enable [her] to provide physician services to patients in accordance with [the contract]." Because she believes that Parkview did not live up to its end of the bargain, she argues that she was excused from further performance under the contract, including the covenant not to compete.

Parkview asserts that the doctrine of impracticability only applies in limited, catastrophic circumstances such as war, an embargo, or a severe shortage of materials. Parkview also contends that Streeter was not prevented from performance because she carried out her responsibilities up until the day she left. It argues that only the non-competition clause is at issue here, not Streeter's ability to provide high quality care. Finally it maintains that Streeter was required by the terms of the contract to notify Parkview in writing of anything that she considered a material breach and allow Parkview an opportunity to cure the alleged problem.

The doctrine of impracticability may excuse a party from a contractual duty to perform if "a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981). Although the conditions necessary to constitute impracticability are intentionally left undefined, the comments to this section list examples such as "war, embargo, local crop failure, unforeseen shutdown of major sources of supply, or the like, which either causes a marked increase in cost or prevents performance altogether." *Id.* at cmt. a, d. However, it is unnecessary for the court to decide whether the facts alleged by Streeter adequately raise an impracticability defense, because a more fundamental problem exists with its application in this case.

7

According to the Restatement, if the reason a party is prevented from performance is because of the actions or omissions of the other party, the situation is not governed by the doctrine of impracticability but is instead analyzed as a breach of contract by the other party. *Id.* at cmt. d. In essence, impracticability only applies to contractual obligations that are affected by "acts of God" or "acts of third parties." *Id.* Because Streeter claims that it was Parkview itself that created the conditions that made it impossible or impracticable for her to fulfill her duties under the employment agreement, she has basically asserted a breach of contract by the hospital and cannot claim the doctrine of impracticability. Summary judgment is appropriate on this issue.

## 2. Exceptions to Applicability of Non-Compete Clause

As noted above, the non-competition clause of the contract specifies that it is inapplicable in certain circumstances. Streeter contends that there are genuine issues of material fact as to whether there was a mutual agreement between the parties to terminate the agreement or whether there was a breach of a material term of the agreement by the hospital. If either of these circumstances occurred, the covenant not to compete would be unenforceable.

### a. Termination by Mutual Agreement

Streeter argues that there is nothing in the employment agreement that requires a termination by mutual agreement to be in writing and that a factual issue exists concerning whether Parkview's course of conduct evidenced an acceptance of her decision to terminate her employment. Streeter argues first that Parkview did not notify her of its intent to hold her to the terms of the non-competition clause until approximately two months after she sent her letter of intent to terminate the contract. Additionally, according to her, the attempt by Parkview to negotiate new conditions of employment with her and the other physicians, including the possibility of buying back

the practice and a discussion of a "joint venture model," indicated its consent to the termination of her existing contract and caused her to believe that there was in fact agreement.

To support her position, Streeter cites *Drinkwater v. Patten Realty Corp.*, 563 A.2d 772 (Me. 1989). In that case, the plaintiffs sought specific performance of a contract for the sale of a house. *Id.* at 773. After summary judgment was entered for the defendants, they argued on appeal that the judgment should be affirmed because the parties had agreed to rescind the contract. Id. at 774-75. According to the Law Court, "[a]n agreement to rescind a contract is itself a contract and must be evaluated by principles of contract law." *Id.* at 775 (citing RESTATEMENT (SECOND) OF CONTRACTS § 283 & cmt. a). Although the Court noted that there was "no express offer to rescind the contract and no express acceptance," the defendant argued that the plaintiffs accepted rescission when they cashed a check sent by the defendant to refund their earnest money deposit. *Id.* However, the Court determined that questions of fact existed as to whether the plaintiffs' conduct in negotiating the check was actually a manifestation of their consent to rescind the contract and whether any alleged agreement to rescind was voidable for mistake or fraud. *Id.*

In the present case, Parkview argues that there is no reasonable basis upon which to find that a mutual agreement was reached to terminate Streeter's employment agreement. It contends that Streeter's decisions to terminate her existing employment contract, and ultimately, her employment with the hospital, were unilateral actions. Parkview also points to Lewis' affidavit, in which he asserts that in spite of repeated requests by the physicians to characterize their decisions to leave Parkview as "mutual

9

terminations," Parkview refused to agree.[9] However, it is the fact-finder that must assess the credibility of both Streeter and Lewis, not this court. *See Dionne v. LeClerc*, 2006 ME 34, ¶ 15, 896 A.2d 923, 929. Whether Parkview by its conduct during negotiations in fact manifested an agreement to end Streeter's employment contract is also an appropriate question for the jury.

### b. Material Breach by the Hospital

Streeter also contends that issues of material fact exist as to whether Parkview was in material breach of the contract. The question of whether a material breach has occurred is factual. *Jenkins, Inc. v. Walsh Bros., Inc.*, 2001 ME 98, ¶ 13, 776 A.2d 1229. Streeter has provided sufficient record evidence to present a genuine issue as to whether Parkview breached the agreement by failing to provide her with adequate staffing, equipment, and administrative support. However, Parkview asserts that paragraph 3(A) of the employment agreement required Streeter to notify Parkview by certified mail of any material breach and give it thirty days to cure said breach. Because she did not send the necessary notice of breach, Parkview argues that it is entitled to judgment as a matter of law on this issue.

Streeter claims that the letter sent by Gimbel on February 15, 2006 following the post partum hemorrhage of a patient constituted sufficient notice to Parkview of the breach. Although Parkview disputes that the letter in any way referenced Streeter or

---

[9] They also argue that Streeter testified at her deposition that there was no mutual agreement to terminate the agreement. However, the exact testimony cited is as follows:

Q. Now, with regard to little two-I, the termination by mutual agreement, you're not – we have a lawsuit here today – you and the hospital never sat down and reached a mutual agreement as to the termination, did you.

A. We did not.

Streeter Dep. 93:2-6. Although the defendants contend that this is an admission by Streeter concerning the absence of any mutual agreement, it is possible to read her response as stating only that the two parties did not formally and expressly agree to a termination.

10

her employment agreement, the only evidence originally before the court was Gimbel's characterization of the letter, (*See* footnote 3); therefore, the court cannot say as a matter of law that the letters did not serve as notice to Parkview that it was in material breach of the contract.[10] The letters clearly indicate a dispute as to material facts that make summary judgment inappropriate.

### c. Enforceability of Covenant Not to Compete and Liquidated Damages

It is not necessary to address either of these remaining arguments presented by Streeter because summary judgment is denied generally as discussed above.

## IV. DECISION AND ORDER

The clerk will make the following entry as the Decision and Order of the court:

**A.** Plaintiff's Motion for Partial summary Judgment on the issue of impracticability is granted.

**B.** Plaintiff's Motion for Partial summary Judgment is denied as to other issues.

SO ORDERED.

Dated: May 29, 2008

Thomas E. Delahanty II
Justice, Superior Court

---

[10] Parkview also argues that Streeter did not terminate her contract for material breach. First, it points to Streeter's termination letter sent four months after the Gimbel letter and notes that she invoked the provision of her contract that required her to give six months notice of termination, not the material breach clause. Second, it cites Streeter's deposition testimony to argue that she admitted that her decision to terminate was not for material breach. Again, however, Parkview mischaracterizes Streeter's testimony. The cited portion states only that neither she nor Gimbel provided notice to Parkview that they were terminating their contracts for material breach. The plain language of the employment agreement requires Streeter to provide notice of a material breach only, not notice of termination because of a material breach. Additionally, the contract requires her to give six months notice to Parkview in the event of an early termination. Thus, the letter and deposition testimony do not conclusively resolve the question of the reason for Streeter's early departure.

11

)F COURTS
land County
Box 287
iine 04112-0287

TERRENCE GARMEY ESQ
NICOLE LORENZATTI ESQ
SMITH ELLIOTT SMITH & GARMEY
PO BOX 442
PORTLAND ME 04112

)F COURTS
land County
Box 287
iine 04112-0287

RICHARD MOON ESQ
DOUGLAS CURRIER ESQ
ALEXIA PAPPAS ESQ
VERRILL & DANA
PO BOX 586
PORTLAND ME 04112-0586