STATE OF MAINE                                    SUPERIOR COURT
                                                    CIVIL ACTION
YORK, ss.                                    DOCKET NO. CV-08-142


CARRINGTON WILLIAMS and
EMORY WILLIAMS,

                    Plaintiffs

           v.                                          ORDER


ALLSTATE INSURANCE COMPANY,

                    Defendant


     This case comes before the Court on Defendant Allstate Insurance Company's

(herein "Allstate") motion for summary judgment made pursuant to M.R. Civ. P. 56. It

was submitted on the pleadings, without hearing. The motion will be Denied.

                         FACTUAL BACKGROUND

     The facts of this case are largely undisputed. Plaintiffs Carrington and Emory

Williams are partners in a limited family partnership that owns a residence located at 17

Lester B. Orcutt Boulevard in Biddeford Pool, Maine. Defendant's Statement of Material

Fact (DSMF) ¶ 1. This residence is a summer home, and is unoccupied in the winter

months. DSMF ¶ 4. The Plaintiffs have a homeowner's insurance policy (herein "the

Policy") through Allstate that provides coverage for the residence. DSMF ¶ 2.

     On or about April 12, 2007, it was discovered that water pipes inside the

residence had frozen and ruptured, and that water had flooded the premises. DSMF ¶

5. The water flowing from the ruptured pipes caused extensive damage to the residence

and to personal property contained therein. DSMF ¶ 5. At the time that the burst pipes

were discovered, the residence had been unoccupied since some time in September

2006. DSMF ¶ 6.

The Policy provides protection to the actual residence, and to the personal property located therein, for accidental physical loss. DSMF ¶ 7. However, this coverage is subject to certain restrictions, one such restriction being that the Policy will not provide coverage for the

> [f]reezing of plumbing, fire protective sprinkler systems, heating or air conditioning systems or household appliances, or discharges, leakage or overflow from within the systems or appliances caused by freezing, while the building structure is vacant, unoccupied, or being constructed unless you have used reasonable care to:
> a) maintain heat in the building structure; or
> b) shut off the water supply and drain the system and appliances.

DSMF ¶ 7; see Policy, attached as Exhibit A to the Complaint.

It is undisputed that the water supply system servicing the residence was not shut off and drained during the winter of 2006-2007. DSMF ¶ 8. As such, in order for the Policy to cover the losses to the Plaintiffs' residence, they would need to have used reasonable care in maintaining the heat in the building structure. See Policy.

Since 1991, Gil Fecteau of Gil's Oil Service has supplied heating oil for the Plaintiffs' residence.[1] DSMF ¶ 9. On or about October 19, 2006, Mr. Fecteau delivered 14 gallons of fuel oil to the residence. DSMF ¶ 10. Allstate alleges that, when Mr. Fecteau next delivered fuel oil on December 27, 2006, the fuel tank took only 8.9 gallons, leading Mr. Fecteau to conclude that the heating system was not burning fuel. DSMF ¶ 11. Further, Allstate alleges that on December 27, 2006, Mr. Fecteau sent Plaintiffs' an invoice that included a hand-written note advising of his concern that the system was not burning fuel, and suggesting that the system be checked. DSMF ¶ 12. The Plaintiffs took no action in response to this note. DFMS ¶ 13.

---

[1] While this fact has been admitted, Allstate supports the fact with a record citation to the Affidavit of Gil Fecteau. It appears that affidavit was inadvertently omitted from Allstate's filing. As noted, the facts involved here are largely uncontested. This decision is not based on the absence of the Fecteau affidavit and its presence would not change the outcome.

2

Mr. Fecteau next delivered oil to the residence on February 21, 2007; at this point, the system took only 4.4 gallons. DSMF ¶ 14. Plaintiff's sent payment to Gil's Oil Service for the above mentioned deliveries in the respective amounts of $27.67, $19.30, and $9.98. DSMF ¶ 15. However, during the prior four winters, the residence consumed 391 gallons (2002-2003), 251.7 gallons (2003-2004), 188.3 gallons (2004-2005), and 175.2 gallons (2005-2006), DSMF ¶ 16, and the average bill for each of these four winters amounts to approximately $632.00. DSMF ¶ 17.

After the pipe bust, Garnett Colpitts, a plumbing and electrical contractor, inspected and repaired the furnace at the residence. DSMF ¶ 18. He determined that the cause for the heat not coming on was a failed ignition transformer. DSMF ¶ 19.

The Plaintiffs allege that, as a matter of practice, they have maintained heat in the residence during the winter months. Plaintiff's Additional Statement of Material Facts[2] (ASMF) ¶ 2. In an effort to maintain heat in the residence, Plaintiffs installed a "Winter Watchman," a device that illuminates a red light if the temperature in the residence drops to a certain level, in a window that is visible from the street. ASMF ¶ 3; Affidavit of Carrington Williams ¶ 6. Moreover, the Plaintiffs have an informal agreement with a local contractor, Jeffrey Keezer, and a local real estate agent, Peter McPheeters, whereby both men would check the residence's window to see if the Winter Watchman was indicating that the temperature was too low.[3] ASMF ¶ 3. In the past, these men have noticed that the light was illuminated, and took steps to ensure that the furnace was

---

[2]    Plaintiffs refer to this as their "Opposing Statements of Material Fact," but for clarity sake, I will refer to this document as their ASMF.

[3]    According to Paragraph 9 of Mr. McPheeters affidavit, he has a daily routine of passing by the residence, "taking note of the window in which the red light is positioned." According to Paragraph 7 of Mr. Keezer's affidavit, he has, for the past ten years or so, paid "deliberate attention to the window where the Williams' positioned the Winter Watchman during their winter absence to see if the Winter Watchman red light was on."

working properly. ASMF ¶ 4; Affidavit of Jeffrey Keezer ¶ 8; Affidavit of Peter McPheeters ¶ 8. According to both men, during the 2006-2007 winter, both men frequently checked the residence; at no point did they see the red light illuminate. ASMF ¶ 5; Affidavit of Jeffrey Keezer ¶ 9; Affidavit of Peter McPheeters ¶ 9. Further, the Plaintiffs allege that they attributed their residences' low heating oil consumption to the fact that the 2006-2007 winter was unseasonably warm.[4] ASMF ¶ 7.

## PROCEDURAL BACKGROUND

On May 21, 2008, the Plaintiffs filed the present complaint (Count I) asking this Court to declare, under the Declaratory Judgment Act[5], that Allstate is obligated to cover the Plaintiffs' loss, and further, alleging (Count II) breach of contract, and (Count III) a claim under the Unfair Claims Settlement Practices Act, 24A M.R.S.A. § 2436-A. In response, Allstate denied the material allegations contained in the complaint, arguing that, under the facts of this case, the Policy does not require Allstate to cover the Plaintiffs' losses.

On March 10, 2009, Allstate filed the present motion for summary judgment, arguing that, as a matter of law, the Plaintiffs' failed to take reasonable care to maintain the temperature in the residence, and thus, the resulting loss is not covered under the Policy.

## DISCUSSION

### I.     Standard of Review

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c);

---

[4]     Allstate correctly points out that there is nothing in the record establishing, as a matter of fact, that the temperatures that season were unseasonably low. Defendant's Reply Statement of Material Fact ¶ 7.

[5]     14 M.R.S.A. § 5951 *et al.*

see also *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575.

II.     Did the Plaintiffs Exercise Reasonable Care to Maintain Heat in the Residence?

The record demonstrates that the Plaintiffs did, in fact, take certain steps to ensure that the heat was properly working in the residence. Specifically, the Plaintiffs had an informal agreement with two individuals, Mr. Keezer and McPheeters, whereby those men would regularly check the residence to see if the indicator light of the Winter Watchman was illuminated, thereby denoting that the temperature in the residence was too low. Further, we know that, in the past, when the indicator light has illuminated, Mr. Keezer or Mr. McPheeters have entered the residence to investigate why the residence lacked heat.

On the other hand, the record demonstrates that the residence was burning far less fuel than normal, and further, that the seasonal fuel bill for the 2006-2007 winter was markedly less than the average of the prior four winters.

Based on this conflict, this Court cannot conclude as a matter of law that the Plaintiffs failed to exercise reasonable care in maintaining the residence's temperature. While it has been admitted that the residence was burning less fuel than normal, there is a disputed question of material fact as to what, if anything, Mr. Fecteau communicated to the Plaintiffs about the possibility that their furnace was not working properly. The existence of this communication and what exactly was said in it has a direct bearing on the issue of reasonable care. As such, summary judgment is improper.

5

## CONCLUSION

Allstate's motion for summary judgment is DENIED.

Dated:        June 25, 2009

G. Arthur Brennan
Justice, Superior Court

Thomas Danylik, Esq. - PLS
Martica Douglas, Esq. - DEF

6