STATE OF MAINE
CUMBERLAND, SS.



SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-07-435

PAUL HENCKEL,

    Plaintiff

v.

RODNEY BELANGER et als.,

    Defendants

**ORDERS ON MOTIONS
REGARDING EXPERTS**



DONALD L. GARBRECHT
LAW LIBRARY

MAY 28 2008

## I. BEFORE THE COURT

This matter comes before the court on the defendants' motion to exclude two of

the plaintiff's expert witnesses, the plaintiff's objection to the defendant's expert witness

designations,[1] the plaintiff's motion to strike the defendant's reply to the plaintiff's

aforementioned objection, and the plaintiff's motion to amend the complaint.

## II. BACKGROUND AND PROCEDURAL HISTORY

This is essentially a negligence and breach of contract action filed by Paul

Henckel (Henckel) against Rodney Belanger personally and as co-trustee with Priscille

Belanger of the Belanger Living Trust, and Rod's Electric, Inc. (collectively Belanger).

According to the allegations in the complaint, the suit stems from a fall that Henckel

suffered while installing aluminum siding for Belanger. Henckel contends that

Belanger provided him with a defective plank to be used as scaffolding, and that as a

---

[1] Notwithstanding the title of the plaintiff's filing, this is essentially a motion to limit the testimony of one expert witness and to exclude other experts altogether. The court should also note that all of the plaintiff's filings are single-spaced instead of double-spaced, as required by M.R. Civ. P. 7(f), and are therefore somewhat difficult to read.

result of the fall he suffered a compound ankle fracture that ultimately led to a partial leg amputation.

On August 1, 2007, Henckel filed a complaint with the court alleging negligence, failure to warn of dangerous conditions, and breach of contract. Belanger filed an answer on August 9, denying the same. This court issued a scheduling order on September 4, setting various deadlines for amendment of pleadings and expert witness designations, discussed in more detail below. The pleadings at issue here and the accompanying filing dates will also be discussed below.


## III. DISCUSSION

### A. Motion to Exclude Plaintiff's Experts

Belanger filed a motion on January 11, 2008 to prevent the plaintiff from calling a vocational expert and an engineering expert because they argue that no such experts have been timely designated and Henckel did not request an enlargement of the deadline contained in the scheduling order.[2] Although Henckel did serve Belanger's counsel with an appropriate and timely designation of medical expert witnesses, Belanger takes issue with the portion of the designation concerning the vocational and engineering experts. In paragraphs 5 and 6 of Henckel's designation, he states his intent to call a vocational and an engineering expert, but that he had "not yet retained a specific expert, but will do so as quickly as possible." Belanger contends that they will suffer undue prejudice if Henckel is allowed to designate new experts after the deadline has passed.

---

[2] Plaintiff's deadline to designate experts was December 4, 2007.

2

Henckel first argues that his "general designations" were sufficient to satisfy Rule 2; therefore was no reason to request an extension of time. He further states that he has since retained a vocational expert and has attached her curriculum vitae to his opposition to the defendants' motion.[3] Henckel's counsel correctly states that he would be severely prejudiced by the exclusion of this witness. He also asks the court to grant an extension of time so that he may name an engineering expert which he believed was not necessary until after some depositions had been taken. According to Henckel, he contacted Southern [sic] Maine Technical College[4] to retain an engineering expert, but the school's holiday break prevented him from discovering who was assigned to the case. He believes that it is "critical" to his case that this expert is allowed to testify, and promises to notify the defendants and the court when he learns his or her identity.[5]

The scheduling order specifically ordered the parties to "include a complete statement of the information and reports required by M.R. Civ. P. 26(b)(4)(A)(i)" in their expert witness designations. That rule states that a party shall

> *identify each person* whom [he or she] expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion, and to identify the data or other information considered by the witness in forming the opinions, any exhibits to be used as a summary of or support for the opinions, the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years, and the compensation to be paid for the study and testimony..."

(emphasis added). Considering the extensive amount of information that a party is obligated to include in an expert witness designation, it is not difficult to see that

---

[3] On January 11, 2008 the plaintiff designated an expert for vocational issues and provided a *curriculum vitae*, but did not supply any additional information as required by M.R.Civ.P. 26 (b)(4)(A)(i).

[4] The defendants correctly point out that SMVTI is now known as Southern Maine Community College.

[5] The plaintiff's opposition was filed on January 30, 2007. As of the date of the hearing on the pending motions, May 8, 2008, no such notification has been made.

Henckel has absolutely failed to properly designate a vocational or engineering expert. Indeed, the very first bit of information that is required is the expert's identity. Not only did Henckel fail to provide that by the deadline, but he also failed to include almost all of the necessary information that a proper designation should contain.

Moreover, Rule 6(b)(2) indicates that when the court has ordered that something be done within a specified time and a party has not requested additional time before the initial time for action has expired, the party must show that "excusable neglect" was the reason for the delay. While "a court does have some discretion in the enforcement of procedural rules," a party must show "extraordinary circumstances that work an injustice" to succeed in a claim of excusable neglect. *Gregory v. City of Calais*, 2001 ME 82, ¶ 7, 771 A.2d 383, 386. Henckel simply has not shown any extraordinary circumstances that would explain why he failed to identify and designate the contested expert witnesses within the three-month period allowed by the scheduling order.

What has been lost here, at the expense of counsels' needless finger pointing, is the true intent of the Civil Rules "to secure the just, speedy and inexpensive determination of every action." M.R.Civ.P. 1.[6]

Without a proper designation, the defendants will undoubtedly be prejudiced, but to exclude plaintiff's experts will gut his case and seriously impair his ability to seek redress. Even if plaintiff had met the deadlines and provided appropriate information, the case would not be on the current trial list. This court's next civil trial list is September through October 2008. The court will exercise its discretion to provide additional time for plaintiff to provide a proper designation and for the defendants to pursue discovery if necessary.

---

[6] The court has outlined the details of counsels' arguments only to illustrate that the extent of counsels' bickering over routine matters has overshadowed the serious claims presented by a seriously injured party.

## B. Plaintiff's Motion to Limit and/or Exclude Defendant's Experts

On February 6, 2008, Henckel filed a retaliatory "Objection to Defendants' Designation of Expert Dr. Kimball [and other healthcare providers].[7]" Belanger timely designated Dr. Kimball, an orthopedic surgeon, to testify about Henckel's injuries and the infection that followed, and his present and future work capabilities. Henckel now seeks to prevent Dr. Kimball from testifying about infections and work capability because he contends that Dr. Kimball is not an expert in these areas. He first contends that Dr. Kimball has never even examined him and further argues that Belanger has failed to identify any records or other data considered by Dr. Kimball.[8] Henckel also asks this court to exclude entirely the various healthcare providers that are named in paragraph 2 of Belanger's designation. According to Henckel, Belanger's designation states the following:

> Defendant may call the Plaintiff's healthcare providers to offer factual evidence and opinions consistent with the medical records that have been produced as part of discovery. These healthcare providers have not been specifically retained, and because they are Plaintiff's healthcare providers, the Defendant cannot contact them without the Plaintiff's authorization.

Henckel contends that Belanger has not provided the necessary information required by Rule 26. He argues that four of the eight listed experts are facilities, not individuals, and he is unable to depose a facility. Additionally, Henckel asserts he provided Belanger with an authorization for the release of medical records and information.[9]

---

[7] The healthcare providers listed are those from whom the plaintiff sought treatment. Two of them are specifically listed in the plaintiff's own expert designations.

[8] Neither party has provided the court with a copy of Belanger's expert witness designations (even though plaintiff said it was attached to his pleading), so it is difficult to analyze whether the designations satisfy Rule 26.

[9] Henckel also asserts that he has no recollection of being treated by two of the designated witnesses, Ortho Atlantic Performance Therapy and Dr. Michael A. Ciampi.

Henckel also takes issue with Belanger's request for Dr. Kimball to conduct an independent medical examination (IME). He contends that it does not satisfy the requirements under Rule 35 for seeking such an examination because Belanger has not filed the requisite motion, and has not provided him with proper notice. However, Belanger is not actually seeking an IME unless this court believes it is necessary to resolve the dispute over the designation of Dr. Kimball. Thus, their request for an IME is actually offered as an alternative for the court to consider. Furthermore, it is the court order requiring an IME that must provide notice to the person to be examined, not the motion from the party seeking the order. *See* M.R. Civ. P. 35(a) (stating "[t]he order may be made only on motion for good cause shown and upon notice to the person to be examined and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made"). Before the court need address any request for an IME however, it must determine whether the designation of Dr. Kimball is insufficient to allow him to testify about Henckel's injuries.

Belanger contends that as a physician, Dr. Kimball has the requisite "specialized scientific and technical knowledge" to testify about Henckel's infection and his work capabilities. *See* M.R.Evid. 702. They argue that even though Dr. Kimball has chosen to specialize in orthopedic surgery, he possesses sufficient knowledge of infectious diseases and rehabilitation, particularly because such knowledge is an integral part of his occupation. They assert that Henckel has been fully apprised of Dr. Kimball's anticipated opinions and that if Henckel has further questions, he can take the doctor's deposition. Additionally, they assert that it is unnecessary for Dr. Kimball to personally examine Henckel in order to form an opinion that is based upon his review of the medical records, medical literature, and other discovery along with his education,

6

training and experience. However, should the court disagree, they are prepared to have Dr. Kimball perform an IME of Henckel if the court deems it necessary.

None of the evidentiary rules concerning expert testimony require a physician to have actually examined a person before he or she may express an opinion about that person's injuries. *See* M.R.Evid. 702-706. Instead, as the Law Court has noted, "[o]nce the trial justice determines that an expert is qualified to render an opinion relevant to the pending proceeding, the opinion of the expert is admissible if it is based on a proper factual foundation." *State v. Thompson*, 503 A.2d 689, 692 (Me. 1986). All the proponent of the testimony need show is that facts or data used by the expert to form his or her opinion are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *Id.* (quoting M.R. Evid. 703). With this in mind, it is clear that physicians commonly rely upon medical records, medical literature, and their education, training and experience in order to form a medical opinion. The question of whether Dr. Kimball is qualified to discuss infection and infectious diseases and rehabilitation depends upon the extent of his knowledge and training in those areas and would likely require further information from Belanger before it can be determined.

The final objection to Belanger's designations concerns the healthcare providers that he has informed Henckel that he may call as witnesses. Although Henckel argues that he has already provided the necessary authorization to obtain information from his doctors, Belanger correctly points out that the authorization pertained only to medical documents, and not to contact with the physicians. Belanger further asserts that they are prohibited from directly contacting Henckel's treatment providers under federal law and health care privacy rules. For this reason, they contend that they have fully satisfied the requirements for expert designation, given the unique circumstances of this

7

case. Although they claim that the federal Health Insurance Portability and Accountability Act (HIPAA) prevents such contact, they do not provide any citation to the relevant sections of that statute, nor do they specify the health privacy rules that would be violated.

Under HIPAA, a "covered entity" is prohibited from disclosing an individual's protected health information unless the patient authorizes a disclosure or unless disclosure is otherwise required or permitted under the statute. 45 C.F.R. § 164.502(a). The definition of "covered entity" includes health care providers, and "health information" includes oral information. *Id.* at § 160.103. An authorization from the patient must specify the exact information to be disclosed. *Id.* at §154.508(c). It is thus evident that the authorization provided by Henckel in this case *did not* extend to any contact with his providers or any testimony they might give about his condition. However, HIPAA permits disclosure of health information pursuant to a court order or to a subpoena or discovery request when certain conditions have been met. *Id.* at § 164.512(e). It is unclear from the record whether Belanger asked for an additional authorization from Henckel that would cover contact with his providers. It is also unknown whether an appropriate discovery request was made or whether these individuals have been subpoenaed. What is clear, however, is that Belanger has not asked this court to issue an order requiring the healthcare providers to speak to them about Henckel's condition. No further ruling is required at this time.

## C. Plaintiff's Motion to Strike Defendant's Opposition to that Motion

Belanger filed a "Reply to the Plaintiff's Objection" to their expert designations on February 27, exactly twenty-one days after the plaintiff filed his objection. In return, Henckel filed a motion to strike Belanger's reply, claiming that it was filed outside of the seven days allowed by M.R. Civ. P 7(e) for a party to file a reply memorandum.

Henckel is correct that a party has seven days to reply to an opposition to a motion, but he is mistaken in his belief that the memorandum filed by Belanger was such a reply. Notwithstanding the title of the memorandum, it is actually an opposition to Henckel's motion that was filed to limit or exclude expert testimony. As such, Belanger had twenty-one days from the filing of Henckel's motion to file a memorandum in opposition. *See* M.R.Civ.P. 7(c)(2). Although Henckel has posited Belanger's expert designations as the first filing for purposes of calculating the time requirements, those designations do not constitute a "motion" for purposes of Rule 7, as they were not "[a]n application to the court for an order." *Id.* at 7(b)(1). Instead, the first motion was actually filed by Henckel, and Belanger thus timely filed its opposition thereto. Therefore, Henckel's motion to strike Belanger's opposition to his motion on the basis of a late filing is without merit and is dismissed.

## D. Motion to Amend Complaint

Once a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." M.R.Civ.P. 15(a). Unless there has been "undue delay, bad faith, dilatory tactics, or unfair prejudice, courts should freely allow an amendment to a complaint." *Longley v. Knapp*, 1998 ME 142, ¶ 19, 713 A.2d 939, 945. However, the trial court has discretion over whether to grant a motion to amend and may deny it if the amended complaint would be subject to a motion to dismiss. *Glynn v. City of South Portland*, 640 A.2d 1065, 1067 (Me. 1994).

Henckel filed a motion to amend on March 10, 2008, more than two months after the Scheduling Order deadline and only two months before the discovery deadline. He seeks to include claims under the theories of *res ipsa* [sic] *loquitor*, premises liability, and strict liability. He asserts that he learned of the latter two theories only after depositions

were taken in this case, and that justice requires that he be given every possible legal opportunity for recovery. Belanger first argues that there has been undue delay in filing the motion because the date for the end of discovery has now passed and a total of five depositions have already occurred. Additionally, they contend that the added claims would not survive a motion to dismiss, and that the motion itself fails to state with particularity the grounds upon which it is based. *See* M.R.Civ.P. 7(b). In his reply memorandum, Henckel again accuses Belanger of undue delay in the ADR process and asserts that there is sufficient time for Belanger to respond to the amended complaint. Even if some amount of delay iin the ADR process is attributed to Belanger, it's not relevant to an amendment of the complaint. Henckel also submits that it is inappropriate for Belanger to argue against the amended counts, as "[t]heir opposition is not the forum to plead their case." He believes his motion adequately states the grounds for the requested relief.

It should be first noted that there is nothing that prevents Belanger from asserting the reasons why Henckel's motion to amend should be denied, including that the amended claims would be subject to dismissal. Thus, his argument that the opposition is not the proper place for such argument is entirely without merit. Furthermore, according to the Law Court, the doctrine of *res ipsa loquitor* "is neither substantive law nor a theory of negligence. Rather, it is a form of circumstantial evidence that permits a jury to infer negligence and causation from the mere occurrence of an event." *Poulin v. Aquaboggin Waterslide*, 567 A.2d 925, 926 (Me. 1989). Therefore, it is unnecessary to plead *res ipsa loquitor* as a separate count.[10] Instead, Henckel can

---

[10] Although Henckel asks the court to include this claim, there is no mention of the doctrine of *res ipsa loquitor* in the complaint, nor are there any facts that would support such a finding.

request that the jury be instructed on the doctrine should the evidence at trial warrant such an instruction.

As for the claim concerning premises liability, it is well established that "[a] landowner owes a duty of reasonable care to provide safe premises to all persons lawfully on the land, and a duty to use ordinary care to ensure the premises are safe and to guard against all reasonably foreseeable dangers, in light of the totality of the circumstances." *Coffin v. Lariat Assocs.*, 2001 ME 33, ¶ 8, 766 A.2d 1018, 1020. However, the problem with Henckel's use of a premises liability claim is that he has not alleged that Belanger failed to provide safe premises, only that he failed to provide safe materials to be used as scaffolding. In fact, the amended complaint does not even specify who actually erected the scaffolding. Because the amended complaint fails to allege adequate facts to establish a claim for premises liability, it would not survive a motion to dismiss on this additional theory of recovery.

The same is true for the claim of strict liability. Under 14 M.R.S. § 221 (2007), strict liability applies only to claims involving the sale of "goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property." Other than a claim based on a sale of defective products, the only other basis in Maine law for holding someone strictly liable stems from cases involving injuries caused by dangerous animals. *See e.g. Young v. Proctor*, 495 A.2d 828 (Me. 1985); *see also* JACK H. SIMMONS ET AL., MAINE TORT LAW §§ 14.05-06 (2004). Thus, it is not surprising that Henckel has not cited to any authority that would allow him to bring a claim for strict liability on these facts.

## IV. DECISION AND ORDERS

The clerk will make the following entries as the Decision and Orders of the court:

11

**A.** The defendants' motion to exclude plaintiff's experts is denied without prejudice; however,

> **1.** the plaintiff must provide the name and all identifying information of his engineering expert to defendants not later than May 22, 2008;
>
> **2.** the plaintiff must provide all appropriate information required by M.R.Civ.P. 26(b)(4)(A)(i) as to his vocational and engineering experts not later that June 9, 2008.
>
> **3.** If the defendants intend to call counter experts, they shall designate them not later than July 9, 2008.
>
> **4.** All further discovery regarding the additional experts shall be completed not later than July 31, 2008.

**B.** The plaintiff shall submit to an examination by Dr. Kimball pursuant to M.R.Civ.P. 35. Defendants shall provide notice of the date and time of the examination to plaintiff's counsel not later than June 9, 2008.

**C.** Plaintiff's motion to strike defendants' opposition is dismissed.

**D.** Plaintiff's Motion to Amend is denied.

SO ORDERED.

DATED: May 8, 2008

Thomas E. Delahanty II
Justice, Superior Court

12

= COURTS
nd County
ox 287
ne 04112-0287

NEAL WEINSTEIN ESQ
PO BOX 660
OLD ORCHARD BEACH ME 04064

in 04112-0287

MARTHA GAYTHWAITE ESQ
FRIEDMAN GAYTHWAITE WOLF & LEAVITT
PO BOX 4726
PORTLAND ME 04112

box 287
ine 04112-0287

ELIZABETH GERMANI ESQ
GERMANI & RIGGLE
93 EXCHANGE ST
PORTLAND ME 04101